131 So.2d 679

M. A. NORDEN

v.

J. M. CAPPS and cross-appeal.

1 Div. 739.

Supreme Court of Alabama.

March 12, 1959.

Rehearing Denied July 13, 1961.

Robt. T. Cunningham, Cunningham & Wilkins, Mobile, for appellant and cross-appellee.

Thornton & McGowin, Mobile, for appellee and cross-appellant.

LIVINGSTON, Chief Justice.

On August 10, 1953, J. M. Capps filed a bill of complaint against M. A. Norden. The bill alleged, inter alia, that on or about the first of September, 1950, the parties entered into a partnership or joint venture for the purchase and sale of surplus aircraft parts; that Norden was to furnish the capital and Capps was to devote his time to the business; that the profits and losses arising from the operation of said business should be shared equally by and between the parties; that on or about the 31st of October, 1952, a disagreement arose between the parties in the operation of the business, and, as a result, the partnership was terminated; that the respondent Norden appropriated to himself and excluded the complainant Capps from the books and records, and further appropriated the assets and inventory of the said partnership. The bill prayed for a determination of the interest of Capps in the alleged partnership and accounting between the parties by a reference to the register or special master; the appointment of a receiver if necessary, and for the court to render a decree finally dissolving and winding up the partnership, and for general relief.

Respondent Norden in an amended answer, in substance, denied the existence of a partnership, however, admitting that certain mutual accounts existed between the parties. The answer further stated that complainant Capps, by reason of his own bankruptcy, had no employment and that Norden had loaned Capps the sum of $1600 which had been reduced to $1274, and, further, that Norden had endorsed a note for Capps for $5,000, on which note Capps had paid $600; that Norden endeavored to help Capps get back into the auto parts business, and during this period he advanced Capps the sum of $75 per week; that nothing came of these efforts, and during the late summer or early fall (1950), Norden had a

large stock of tanks and regulator parts on hand, and he agreed with Capps that if he would assist in the sale of these surplus or junk articles, he, Norden, "would take care of him"; that Capps' only income then was the weekly salary he was receiving from the respondent. The answer further denied that Norden entered any business with Capps, but that Capps worked in the business which had been owned and operated by Norden since 1945; that Norden was the only one authorized to draw checks or make purchases, and the business was operated as "M. A. Norden Supply Company."

Respondent Norden did not object to a hearing before a special master, and he prayed that when said account was determined that a judgment be entered against Capps for his overdrafts, his misappropriations, and his accumulated indebtedness to this respondent.

On March 28, 1955, a special master was appointed to hold hearings, examine the data, exhibits and parties, and submit to the circuit court a written report determining:

(a) An operational statement of the surplus aircraft division of M. A. Norden Company from its organization in September, 1950, to its dissolution in 1952, showing sales, receipts, costs and expenses, including withdrawals in cash or other assets by the parties.

(b) The balance of the accounts of the business as of the dissolution thereof on September 30, 1952, listing the assets and liabilities and the ultimate dispositions thereof.

(c) The amounts due from and to the respective parties for their respective actions in connection with the business subsequent to October 1, 1952.

Testimony was taken before the special master. The record shows that in addition to oral testimony given there were many exhibits introduced by both parties. These exhibits consisted of statements and reports prepared by accountants in an attempt to determine an accounting between the parties.

The special master's report in effect found that Norden was indebted to Capps.

Both complainant Capps and respondent Norden filed exceptions to the special master's report.

The cause was submitted in the court below for final decree on bill of complaint, answer, special master's report and exceptions thereto, depositions of parties and witnesses and exhibits.

The court rendered a final decree determining first that a special or limited partnership existed between the parties. Acting on the report of the special master, the trial court further found that Norden owed Capps a balance of $14,189.02. This balance was based on 50–50 split of the alleged partnership profits. To this, the trial court added the sum of $3,160, representing the difference of the merchandise inventory belonging to Capps but not released to him by Norden, and the merchandise taken by Capps from inventory merchandise belonging to Norden, making a total of $17,349.02.

The court taxed interest against Norden from the date of the filing of the bill of complaint (August 10, 1953), bringing the total to $21,220. Judgment for this amount was entered for Capps, together with the costs of court, the court costs to include the sum of $600 found by the court to be the fair and reasonable compensation for the service of the special master.

Respondent Norden appealed, and complainant Capps cross-appealed. For reasons which will become apparent, we will only consider the defendant Norden's appeal.

A chronological order of events which led to this litigation is necessary for a clear understanding of the case. From the record, the following appears:

The respondent, M. A. Norden, had been engaged in business in Mobile since about 1945. The complainant, J. M. Capps, had been engaged in the auto supply business, which went into receivership sometime in 1949. Capps then went to work for Norden. For about a year and a half, Capps

drew about $75 a week for his work. Capps testified that in September, 1950, he and Norden entered into an agreement to buy and sell surplus aircraft parts; that he was to receive 50 per cent. of the profits. .(About May, 1951, Capps was indicted and convicted of mail fraud.) Capps testified that the business continued until October, 1952, when Norden expressed a desire to discontinue the operation. Norden instructed his accountant to get up a statement as to how he stood with Capps. About this time (the record is not clear as to the exact date), Norden accused the accountant of embezzlement and Busch paid Norden about $4,000. In April, 1953, Norden employed Mr. Montiel, a certified public accountant, to examine his records during the period from 1950 through 1952 to determine the profits from the sale of surplus aircraft parts. In his answer, Norden states the results of this audit were submitted to the circuit solicitor in July, 1953. The grand jury returned an indictment against Capps for embezzlement October 26, 1953. This suit was filed by Capps in August, 1953.

The court appointed John C. Gay to act as special master, his duties were specifically outlined in the decree so appointing. Nowhere does it state that he was to determine the issue of whether a partnership did, in fact, exist. Indeed, the special master expressly states in his report: "Relying on information submitted by the defendant's attorney in his brief to the Special Master, that the decision as to the existence of a partnership, joint venture or any other type of profit sharing arrangement has been expressly reserved by the Judge, I am assuming that some type of arrangement existed." The evidence shows that the C.P.A., who was hired by the respondent Norden, was instructed to the effect to show what the status *would be* between the parties *if* a fifty-fifty distribution of the profits was assumed.

Appellant Norden most strenuously argues that the trial court erred in finding the existence of a special or limited partnership between the partners. With this contention, we must agree.

The report of a master to whom a suit is referred is not controlling on matters not submitted to him, but must be determined by the court. The matter of the existence of a partnership vel non between the parties was for the court's determination in this case. Jones v. Stollenwerck, 218 Ala. 637, 119 So. 844. The only evidence before the trial court on this issue was the depositions of the parties and their witnesses. Therefore, under our well-recognized and oft-repeated rule, we must sit in judgment on the evidence. The fact that complainant Capps appeared before the trial judge and identified one or more exhibits will not obviate the application of aforementioned rule to this case. Jones. v. Stollenwerck, supra; Henslee v. Merritt, 263 Ala. 266, 82 So.2d 212; Alabama Digest, Appeal and Error, ☞931(c), 1008. (3).

The prerequisite for a partnership inter sese was stated early by Stone, J.:

"To constitute a partnership inter sese, there must be a mutuality of risks—an interest both in the profits and losses. These risks or interests are not required to be equal; nor is it important that they shall agree in kind. The investment may be unequal, and the parties may agree to divide the profits unequally; yet, if it be one of the terms of the contract, that each shall share in the risks and losses, and also in the profits to be realized, this constitutes them partners as between themselves.

\*   \*   \*   \*   \*   \*

"Whether persons have so acted, or held themselves out to the world, as that third persons can charge them as partners, is a different question, \* \* \*." Smith's Ex'r v. Garth, 32 Ala. 368.

Justice Anderson, speaking for the court in Watson v. Hamilton, 180 Ala. 3, 60 So. 63, stated:

"A partnership is never created by implication or operation of law, apart from an express or implied agreement to constitute the relation. This doctrine must not be confused with holding persons liable as partners by estoppel, or in a few states by sharing profits. Bates on Partnership, § 3. While there must be a contract between the parties, express or implied, neither writing, nor any other particular form, need be observed in the formation of a trading or laboring contract. Mutual consent of two or more competent minds can make this, as it can make other contracts. And, like most other contracts, it may be implied from conduct and circumstances, if significant enough to convince the mind. * * * 'To constitute the relation inter se, the contract must extend beyond a common agreement to share in the profits. It must equally bind the parties to bear the burden of the losses.' Goldsmith v. Eichold, 94 Ala. 116, 10 So. 80, 33 Am.St.Rep. 97."

In Nelms v. McGraw, 93 Ala. 245, 9 So. 719, 720, where one party sought the dissolution of an alleged partnership and a settlement of partnership accounts, the court stated:

"* * * The determination whether a contract, such as we are now considering, constitutes a partnership inter sese, or a mode of compensation for property or materials furnished by one party, or a tenancy in common of the product of the common enterprise, is often a question of difficulty. The main question for consideration is the intention of the parties, legally ascertained; for a partnership, as between the parties, cannot exist unless such be their intention. The usual tests are, community of risks; mutual, though not equal, participation in the profits and losses. But participation in the profits alone is not necessarily decisive proof of a partnership. There are exceptions to the general rule. A person may be interested in, or receive a part of, the profits of a business without becoming a partner."

Again, we held in Cunningham v. Staples, 216 Ala. 531, 113 So. 590, 591:

"When a sharing of the profits is manifestly a mode of compensation merely for the use of money or property, or for services, and no community of expenses or of loss in operation is indicated, the cases uniformly hold that no partnership is created."

See, also, Peck v. Lampkin, 200 Ala. 132, 75 So. 580.

In our opinion, no good purpose would be served by a detailing of the evidence in this case. We have examined, with care, the evidence of each witness in conference, and we are thoroughly convinced from that examination, that no partnership or joint venture ever existed between Norden and Capps. We are convinced that the money Capps received from Norden's operations was purely compensation and not profits. We note that the learned trial judge in his decree used the expression "a special or limited partnership." We feel sure that he was not referring to the statutory limited partnership, because the evidence clearly indicated no such partnership.

The cause is reversed and remanded.

LAWSON, STAKELY and MERRILL, JJ., concur.

On Rehearing

PER CURIAM.

Because of the critical brief filed in support of the application for rehearing, we have examined the entire record in this case

# 478

with painstaking care, and are clear to the conclusion that the opinion rendered on original deliverance is correct; therefore, the application for rehearing is due to be, and is, overruled.

Application for rehearing overruled.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.