238 So.2d 716

In the Matter of Thomas L. SMILEY

v.

The BOARD OF COMMISSIONERS OF the ALABAMA STATE BAR.

3 Div. 369.

Supreme Court of Alabama.

July 16, 1970.

Rehearing Denied Sept. 3, 1970.

William H. Morrow, Jr., Gen. Counsel, Montgomery, for Alabama State Bar.

Warren S. Reese, Jr., Montgomery, for petitioner.

**218**

PER CURIAM.

The petitioner seeks reversal in proceedings wherein the Board of Commissioners of the Alabama State Bar found him guilty of 17 of 18 charges filed against him, and entered an order of disbarment.

On December 17, 1964, the Grievance Committee of the Birmingham Bar Association filed charges against Thomas L. Smiley, such charges consisting of five complaints.

Complaint One alleges:

"That on, to-wit: December 20, 1961, and for some time prior thereto, Thomas L. Smiley was serving as Executor under the Last Will and Testament of Alta B. Smith, the estate at said time being, pending in the Probate Court of Jefferson County, Alabama, said cause being more particularly described as Case Number 44688; and that while acting as Executor or as attorney and while occupying a fiduciary relationship to the estate and to the beneficiaries thereof, the said Thomas L. Smiley did on, to-wit: December 20, 1961, and on diverse occasions thereafter withdraw funds belonging to the estate or to the beneficiaries thereof by drawing checks against the estate made payable to himself as executor, as attorney, as an individual, and in some instances to 'cash', totaling the sum of to-wit: $22,261.80, and failing to pay over the funds received therefor to the beneficiaries of said estate or by appropriating said funds to his own use."

Charge One of this complaint charges a violation of Rule 27, Section A:

" ' * * * failing to pay over money collected by him for his client, or by appropriating to his own use funds entrusted to his keeping, provided the circumstances attending the transactions are such as to satisfy the Board that the attorney acted in bad faith or with fraudulent purpose.' "

Charge Two charges a violation of Rule 33, Section A:

" ' * * * any deceit or wilful misconduct in his profession * * *.' "

Charge Three charges a violation of Rule 34, Section A:

" ' * * * any act, which, by the law of Alabama, constitutes a felony (other than manslaughter) or a misdemeanor involving moral turpitude.' "

Charge Four charges a violation of Rule 36, Section A:

" ' * * * any conduct unbecoming an attorney at law.' "

Petitioner was adjudged guilty by the Board of Bar Commissioners of each of these charges.

Complaint Two alleged:

"That on, to-wit: the 28th day of December, 1962, the said Thomas L. Smiley did issue a check to one Margaret Powell in the sum of $500.00, drawn on the account of the Estate of Alta B. Smith of which the said Thomas L. Smiley was then and there acting as Executor; and it is further alleged that in issuing said check drawn on said estate the said Thomas L. Smiley did misappropriate the funds of said estate or the funds of the beneficiaries thereof by failing to pay over said funds received from said check or by appropriating said funds entrusted to his keeping to his own use."

Charge One of this complaint charges a violation of Rule 27, Section A.

Charge Two charges a violation of Rule 33, Section A.

Charge Three charges a violation of Rule 34, Section A.

Charge Four charges a violation of Rule 36, Section A.

The Board of Bar Commissioners found the petitioner guilty on all four of these charges.

Complaint Three alleges:

"That on, to-wit: the 5th day of February, 1963, the said Thomas L. Smiley did issue a check payable to the Birmingham Trust National Bank in the sum of, to-wit: $1,061.05 drawn on the account of the estate of Alta B. Smith, of which the said Thomas L. Smiley was then and there acting as Executor; and it is further alleged that in issuing said check drawn on said estate the said Thomas L. Smiley did misappropriate the funds of said estate or the funds of the beneficiaries thereof by failing to pay over said funds received from said check or by appropriating said funds entrusted to his keeping to his own use."

Charge One of this complaint charges a violation of Rule 27, Section A.

Charge Two charges a violation of Rule 33, Section A.

Charge Three charges a violation of Rule 34, Section A.

Charge Four charges a violation of Rule 36, Section A.

The Board of Commissioners found the petitioner guilty on all four of these charges.

Complaint Four alleges:

"That, on, to-wit: March 19, 1963, while acting under oath in the Probate Court of Jefferson County, Alabama, the said Thomas L. Smiley stated that he held the sum of, to-wit: $3,876.66 in cash, which sum the said Thomas L. Smiley admitted withdrawing from the Estate of Alta L. Smith, from the fiduciary account at the Birmingham Trust National Bank, and that when directed by the Court to disclose where said cash was being held, refused to answer, said refusal being in the following language: 'Well, Judge, I would like to answer, I refuse to answer on the grounds that it might intimidate me and incriminate me.' "

This complaint includes Charge One, charging a violation of Rule 12, Section A, "Suppress or stifle any evidence or testimony"; Charge Two charges a violation of Rule 36, Section A.

The Board of Bar Commissioners found the petitioner guilty on both of these charges.

Complaint Five alleges:

"That, during the month of, to-wit: August, 1963, the said Thomas L. Smiley, as Executor of the estate of Alta B. Smith, and while occupying a fiduciary relationship to said estate and to the beneficiaries thereof, converted certain shares of stock in the Marathon Oil Company, sometimes referred to as Ohio Oil, and received therefor the sum of, to-wit: $2,941.94, which sums it is alleged were received by the said Thomas L. Smiley, while occupying a fiduciary

relationship to said estate; and it is further alleged that in effecting said conversion of stock, the said Thomas L. Smiley did misappropriate the funds of said estate or the funds of the beneficiaries thereof by failing to pay over said funds received from the sale of said stock or by appropriating to his own use the funds received from the conversion of said stock."

Based upon these allegations, Charge One charges a violation of Rule 27, Section A.

Charge Two charges a violation of Rule 33, Section A.

Charge Three charges a violation of Rule 34, Section A.

Charge Four charges a violation of Rule 36, Section A.

The Board of Bar Commissioners found the petitioner guilty of violations contained in Charge One, Charge Two and Charge Four.

■ The testimony in this case was not taken orally before the Board of Bar Commissioners. Rather, it was taken before a Commissioner and not orally heard by the members of the Board. Under such circumstances, it is the duty of this court to examine all of the evidence and to form our own judgment as to its probative force without any presumption in favor of the findings of the Board. Tanner v. Dobbins, 255 Ala. 671, 53 So.2d 549; Adams v. Logan, 260 Ala. 346, 70 So.2d 786; Carnegie v. Carnegie, 261 Ala. 146, 73 So. 2d 556; Loveman v. Lay, 271 Ala. 385, 124 So.2d 93; Norden v. Capps, 272 Ala. 473, 131 So.2d 679; also Acton v. Board of Commissioners of Alabama State Bar, 283 Ala. 121, 214 So.2d 685.

This we have attempted to do. The evidence taken before the Commissioner together with the exhibits introduced there, comprise more than 1,200 pages. It includes a transcript of the proceedings had before the Probate Court in Jefferson County. The proceedings which culminated in the complaints made against Mr. Smiley with the Board of Bar Commissioners arose out of the following:

Mrs. Alta B. Smith died on December 27, 1960, survived by her husband, Clare B. Smith, and a daughter by a former marriage, Mrs. Marie B. Massey. Clare B. Smith died October 3, 1961.

The will of Alta B. Smith named Thomas L. Smiley as executor. It left a life estate to Clare B. Smith, with the entire remainder to Mrs. Marie B. Massey. The will of Clare B. Smith named Mrs. Marie B. Massey as executrix and left one-half of the estate to Marie B. Massey and the other half to certain other relatives of Clare B. Smith.

Both wills were admitted to probate at approximately the same time.

On July 26, 1963, Mrs. Marie B. Massey filed a petition in the Probate Court of Jefferson County to have Thomas L. Smiley removed as executor of the Alta B. Smith estate, the petition alleging wasting of the assets and failure to account.

At the date of the filing of the petition to remove Thomas L. Smiley as executor of the estate of Alta B. Smith, Mrs. Massey as sole beneficiary of the estate, had admittedly received from Thomas L. Smiley the following sums of money and no more:

| | | | | | |
|---|---|---|---|---|---|
| Nov., 1961, checking acc't., Exchange Security Bank | | | | | $ 1,072.04 |
| Jan., 1962, savings acc't., | " | " | " | " | 1,385.35 |
| May, 1962, | " | " | " | " | " | 1,500.00 |
| June, 1962, | " | " | " | " | " | 1,000.00 |
| July, 1962, | " | " | " | " | " | 3,000.00 |
| July, 1962, | " | " | " | " | " | 500.00 |
| Aug., 1962 | | | | | 400.00 |
| Sept., 1962 | | | | | 17,000.00 |
| | | | Total | | $25,857.39 |

It was consistently agreed between Mrs. Massey and the petitioner that the amount which the petitioner had received as executor of the estate of Mrs. Alta B. Smith totaled some $92,000. Part of this amount was based upon the evaluation attributed to various stocks. Mrs. Massey ultimately received these stocks in kind, with the exception of stock in the Marathon Oil Company, which stock was sold by the executor and converted to cash. Nevertheless, at the time of the filing of her petition, Mrs. Massey alleged, and it was not disputed, that she had received from the executor $25,-857.39. She alleged that amounts received by Thomas L. Smiley, as executor, to the extent of $40,000 belonging to the estate of Clare B. Smith had been comingled in the assets of Alta B. Smith by Thomas L. Smiley.

Following the filing of this petition, on October 3, 1963, Smiley filed a petition in the estate of Alta B. Smith for attorney's fees for extraordinary services in the amount of $21,462.03.

On January 16, 1964, Smiley filed a petition for final settlement which among other things asked the court to determine whether cash items should remain in the estate of Alta B. Smith or should be treated as assets of the Clare B. Smith estate, among such items being a savings account in the City Federal Savings & Loan Association in the amount of $10,000 and a savings account in Home Federal Savings & Loan Association in the amount of $10,000. It was not denied by Mrs. Massey nor disputed by Smiley that these were joint and survivorship accounts in the names of Alta B. Smith and Clare B. Smith, and it was never denied that Clare B. Smith was the survivor. It was further never denied by Smiley that he had possession of these funds totaling $20,000.

It is around this $20,000 that most of the proceedings in the Probate Court were had. The record in this case includes a recapitulation of all deposits and disbursements from November 9, 1961, when the executor's account in the Alta B. Smith estate was opened by Smiley in the Birmingham Trust National Bank, to March, 1964. During that period deposits to the account totaling $67,021.70 were made. These deposits were made in small denominations over a considerable period of time. The record does not indicate that deposits in lump sums of $10,000 each were ever made. Smiley acknowledged that this money passed through the estate bank account.

During the same period of time the records of the bank indicate that withdrawals were made by Thomas L. Smiley as executor by checks drawn to Thomas L. Smiley, as executor, totaling $14,453.05. Additional checks were drawn by Smiley as executor and payable to himself as attorney, totaling $3,240.00. Checks were drawn by Smiley as executor to himself individually totaling $1,018.75.

On January 16, 1964, the Probate Court of Jefferson County entered a decree on final settlement determining, among other things, that there was a balance in the estate of Alta B. Smith to be distributed to Mrs. Massey in the amount of $3,876.60, and that certain items were found to belong to the estate of Clare B. Smith, and determined not to be a part of the estate of Alta B. Smith. These items included the $20,000, which had been in joint and survivorship accounts in two savings and loan associations. On February 6, 1964, Smiley filed his notice of appeal from that decree to the Supreme Court of Alabama.

Thereafter, Mrs. Massey learned from the Probate Judge that the appeal had been taken. The Probate Judge advised her that she needed a lawyer, whereupon she employed William H. Cole. On February 14, Mr. Cole filed a motion to require Smiley to post a bond and to produce certain records, the motion seeking to have the court order the executor to produce for the inspection by the court the deposit books, checking account records, statements, and any and all records of any banking institution, showing the amounts on deposit to the credit of the estate or in the name of the

executor which belonged to this estate or over which he had custody or control.

In addition the motion sought to require the executor to produce deposit slips, bank records showing the disposition and whereabouts of the money formerly deposited in the two savings and loan associations referred to above. Mrs. Massey filed with the Probate Court an affidavit in which she listed all the items which she had received from Mr. Smiley and alleged that she had received only the sum of $25,857.39 in cash by a series of payments from November, 1961 to September, 1962.

A hearing was held on this motion.

Mr. Smiley was evasive, he refused to discuss the whereabouts of the money, he took several inconsistent positions when asked where the $3,876.66 was, which he had previously admitted having. His response was that he had rather not answer that. He was directed by the court to answer about any assets belonging to the estate. His answer was that those assets did not belong to this estate. He was reminded that he had said in his petition for final settlement that he had in his possession this $3,876.66. His response was that he understood that but then he said that he had been mistaken about the $10,000 theretofore in the savings and loan institution, and then asserted that the estate was insolvent. He was asked the following question: "At the time of the petition in October showing $3,800 balance, was there any balance at all in any institution in this estate?" and his reply was, "Yes, sir."

"Q. Where?

"A. * * * no, that is incorrect, there was not because at that time the estate had overpaid Mrs. Massey.

"Q. Therefore, this petition which you signed in October of '63 stating that there is $3,800 in the estate is wrong, was wrong?

"A. Yes, that was wrong.

"Q. All right, how much was missing from the estate at that time.

"A. There is a difference between $3,800 and $10,000.

"Q. In other words, there has been—

"A. An overpayment to Mrs. Massey of some $6,200."

Later on he was asked "Who has got the money right today, where that money is, I don't care what was done with it, I just want you to tell me where the money went, the $10,000?" and he answered, "I don't know."

"Q. I refer you to the $10,000 account in the First Federal Savings & Loan Association, where did that money go?

"A. I don't know.

"Q. Where did the $10,000 in the Home Federal Savings & Loan Association go?

"A. I don't know.

"Q. What was done with the $5,000 account in the City Federal Savings & Loan Association?

"A. I don't know, sir.

"Q. What was done with the two $10,000 treasury bonds?

"A. I don't know, sir.

"Q. You don't have the slightest idea?

"A. I have an idea."

Later on at this initial hearing the following transpired:

"MR. COLE: There is conservatively ten, twenty, thirteen, I guess if this is twenty, this is fifty, $55,000 money listed right there, I want to know who got the $55,000, what has been done with it, you are the Executor, you just tell us.

"A. Well, it is not in the Alta B. Smith estate.

"Q. I want to know where it is, Mr. Smiley. I couldn't care whose es-

tate it is in, I just want to know where it is.

"A.   I am not responsible for it.

"THE COURT: Wait just a minute Mr. Smiley, the only authority as I understand it you have under either one of these estates was under the color of being Executor of the Alta B. Smith estate?

"A.   Yes, sir.

"THE COURT: And in taking charge of any of the assets, either in the joint names of C. B. Smith or C. B. Smith and Alta B. Smith was under the color of being Executor of the Alta B. Smith estate?

"A.   Yes, sir.

"THE COURT: Therefore, anything that you took charge of or handled under the color of that authority, you are answerable for it here in the court, and I so instruct you.   I instruct you to answer the questions as to what you know about those assets there, do you know?

"A.   Some of it I do, and some of it I don't."

Subsequently in this hearing the court noted:

"I am going to request that Mr. Cole file his subpoena on that and file a motion for such matters, that is not covered in his previous motion or else it will be the duty of the court itself, ex parte to require details of everything affecting this estate since there has been some funds comingled, that is not clear here which affects the estate.   What happened to those details as to when they were withdrawn from those building and loan association accounts, and what disposition was made by you, either as Executor of the Alta B. Smith estate or under the color of that authority of Executor or in any other way that you may have handled those funds, I would like to have the full details on that."

Thereafter a subpoena was issued.   The record does not disclose that at any time did Mr. Smiley produce any of the records which he was ordered to produce by the court. The records that were obtained came on a subpoena duces tecum issued to the bank.

The proceeding was continued until the 19th day of March, 1964.

At that time a discussion was had concerning the shares of Marathon Oil Co. stock, which Mr. Smiley sold in August of 1963.   He received for the stock $2,941.94. In connection with that amount of money Mr. Cole asked the following:

"What did you do with the money that you received, the money in August?

"MR. SMILEY: I preserved it for the estate.

"MR. COLE: Where did you put it, Mr. Smiley?

"MR. SMILEY: There is the check for it right there.

"MR. COLE: The check is presented to us here in March.

"MR. SMILEY: Yes, sir.

"MR. COLE: I want to know what you did with the money when you cashed this stock in, that belonged to this estate, that belonged in September or August, I want to know where it was put.

"MR. SMILEY: I kept it.

"MR. COLE: In whose account?

"MR. SMILEY: No one's account.   I just kept the money.

"MR. COLE: You mean you didn't put it in your own personal bank account?

"MR. SMILEY: No, sir."

Mr. Smiley testified that he cashed the check issued by the stock broker on the same day that he received it from the broker (August 30, 1963) and that he had kept the cash since that time.   He testified that

he had retained the cash money in his possession from August until the time of the hearing.

At another point during the hearing, Mr. Smiley was shown a check for $1,378.68, signed by him as executor and made payable to cash. He was asked whether he in fact cashed that check. His answer was that he did not know whether he did or not.

At another point, when shown a check dated February 23, 1962, for $1,500.00, which had been converted to cash, Mr. Smiley was asked if he put that money in any account. His answer was, "I don't know, sir."

Also, he was shown a check for $2,000.00, dated February 21, 1961, endorsed by Mr. Smiley. He was asked whether or not he deposited that amount. His answer was that he did not know.

At no point during these proceedings did Mr. Smiley ever produce all of the cancelled checks that had been written on the executor's account. His testimony was that he did not know where they were.

The record also shows this exchange:

"THE COURT: Now, Mr. Smiley, I think that the estate is entitled to know, and the Court is too, as to where the money is. My rule, since I have given you an opportunity about that, I must rule that you should answer as to where that money is. Then for their benefit, so that they will know that it is safe.

"MR. SMILEY: Well, judge, I would like to answer that, I refuse to answer it on the grounds that it might incriminate me."

At other points, when asked where the money was located Mr. Smiley answered, "I don't remember, I don't know; I can't explain it, I don't know".

As to checks which had been cashed, written on the executor's account and where cash was obtained, Mr. Smiley's only explanation was that most likely he had given it to Mrs. Massey.

In a space of three days checks were drawn out of the accounts payable to Mr. Smiley in various capacities which totaled $3,000. When asked where the $3,000 went his answer was, "I don't know".

At one point Mr. Smiley testified that it was possible that he had run some of his own funds through the estate account.

When asked whether or not the total amount drawn by him as executor to himself individually, in checks payable to cash, and checks payable to himself, as executor, and as attorney, came to $22,261.80, Mr. Smiley's response was that the total was $22,261.79.

During the course of the hearing Mr. Smiley, when again reminded that all of the money in his possession, whether it belonged to the Alta B. Smith estate or to the Clare B. Smith estate, should be turned over to Mrs. Massey either in her capacity as sole beneficiary under the Alta B. Smith estate or in her capacity as executrix of the Clare B. Smith estate, Mr. Smiley responded that what he was appealing to the Supreme Court about was for a greater executor's fee.

At a later hearing in the matter the case having been again continued, Mrs. Margaret Powell was called as a witness. Mrs. Powell testified that she was employed by Thomas L. Smiley in December of 1962, in his capacity as an officer in the Alabama Law Enforcement Officers Association. She was shown a check signed by Thomas Smiley as executor, payable to herself in the amount of $500.00. Mrs. Powell testified that she had endorsed the check and had received cash. When asked what she had used the $500.00 for, her testimony was for the payroll of the Alabama Law Enforcement organization; it was her testimony that the money was put to this use upon the instruction of Mr. Smiley. At no point in the proceedings did Mr. Smiley offer any explanation about this check.

Subsequently a copy of a check was introduced showing the purchase of a cashier's check by Mr. Smiley as executor, the check being made payable to Mrs. Hubert Arrowood for $1,000.00. The cashier's check bore a notation "Death Benefit, Alabama Law Enforcement Officers Association, Inc."

No explanation was ever offered by Mr. Smiley as to why proceeds of the estate were put to this purpose.

Mrs. Massey testified that at one time Mr. Smiley delivered a check payable to her in the amount of $7,949.50. That check was returned because of insufficient funds.

As the hearings continued, another was held on April 8, 1964. Again the subject of discussion was the $20,000, $10,000 of which had been withdrawn from the City Federal Savings and Loan, and $10,000 which had been withdrawn from the Home Federal Savings and Loan Association. Mr. Smiley stated, "We will stipulate two $10,-000 each was the City Federal and Home Federal."

The following comments were made concerning this $20,000:

"MR. SMILEY: No, sir. I am not trying to explain it. I just want to make the point very clear that the $20,000—that $20,000 of the $22,000 that she is claiming, she is claiming that I owe it to the C. B. Smith estate, not to the Alta B. Smith estate.

"THE COURT: Then in either event, you owe it.

"MR. SMILEY: Yes, sir.

\* \* \* \* \* \*

"THE COURT: Are you ready to pay the $20,000 over to the executor of that estate, that is entitled to it?

"MR. SMILEY: Yes, sir.

"THE COURT: Do you have it now?

"MR. SMILEY: No, sir.

Mr. Cole, who was representing Mrs. Massey at this time, and Mr. Walter W. Mims, who was representing the other heirs in the Clare B. Smith estate, and the court itself, pleaded with Mr. Smiley to account for the funds for which he had given no account. Mr. Smiley's response is typified by the following:

"MR. SMILEY: I don't want to make any statement. I don't want to testify.

\* \* \* \* \* \*

"MR. SMILEY: Judge, there is my full answer. There it is all in writing, and it speaks for itself. There is everything that has come into the estate. There is everything—I am not testifying.

\* \* \* \* \* \*

"THE COURT: I am just trying to get the facts so I can get to the honest and fair ruling in this estate. I am called on to make some kind of a ruling in it. According to those checks, they show $67,-000 there that went into the estate. Certainly you have some explanation to what monies—how it was deposited in that estate for $67,000. One thing I would like to know is that $20,000 that you are speaking about, the Home Federal $10,-000 and the City Federal $10,000, that belongs or I believe everybody has acknowledged belongs to Judge C. B. Smith's estate. Was that $20,000 actually deposited to the account of Thomas L. Smiley as executor of the estate of Alta B. Smith?

"MR. SMILEY: Yes, sir.

"THE COURT: Is that in that account now?

"MR. SMILEY: Yes.

"MR. MIMS: Did you answer to that question?

"MR. SMILEY: Not in that account, no, sir.

\* \* \* \* \* \*

"MR. COLE: Your Honor, this is—he got the money.

"MR. MIMS: And claimed it as that estate. And now has done away with it, and he is not responsible. I defy anybody to show me a law to that effect.

\*     \*     \*     \*     \*     \*

"MR. MIMS: Where is the money?

"MR. COLE: Where is the money? The Supreme Court last Monday—we were to go into it, and told you we were going into it.

"MR. MIMS: We know where the case is. Where is the money?

\*     \*     \*     \*     \*     \*

"MR. MIMS: May it please the Court. May I ask for a clarification of Mr. Smiley's position. Mr. Smiley, is it your position that you took this $20,000 knowing that it belongs to C. B. Smith, or is it your position that when you took it, you thought it was an asset of Alta B.?

"MR. SMILEY: When I took it?

"MR. MIMS: Yes.

"MR. SMILEY: I thought it was an asset of Alta B.

"MR. MIMS: It is your position that you were not responsible for it, and you can misappropriate it?

"MR. SMILEY: I haven't misappropriated it.

"MR. MIMS: Is it your position that you can do so?

"MR. COLE: We ask the question—he answered the question where the $20,000 is. \* \* \* I just ask the Court to ask him that question, which he refused to answer, where the $20,000 is. Now that is all I think the Court ought to ask him.

\*     \*     \*     \*     \*     \*

"THE COURT: Wait, I am going to rule that the $20,000 that you admitted you deposited to the account, that you deposited to the Alta B. Smith, I am going to rule that you must answer where that $20,000 is.

"MR. SMILEY: I don't think I am called upon to answer.

"THE COURT: I am ruling that you do.

"MR. SMILEY: I am not on the stand as a witness.

"THE COURT: You are a party in this matter in this estate, in this court. You are under oath to testify as to the truth. And I am going to instruct you now to answer the question there.

\*     \*     \*     \*     \*     \*

"THE COURT: Are you going to answer as to whether or not that money is still in this executor's account or not?

"MR. COLE: That is right. I think the question is where is it.

"MR. SMILEY: No, sir, it is not in the executor's account.

"MR. COLE: The next question is, where is it; that is what we want to know.

"THE COURT: \* \* \* now as far as disclosing about the monies, that you have admitted you have comingled with the assets of the Alta B. Smith estate, certainly you are answerable in this estate for what happened to the monies that went into the account in the Birmingham Trust Bank of the estate of Alta B. Smith, deceased. For aught that appears, it actually belonged to the Alta B. Smith estate.

\*     \*     \*     \*     \*     \*

"MR. COLE: We want to know where the $20,000 is, Tom, that you refuse to tell us where it is. Now, where is it?

\*     \*     \*     \*     \*     \*

"MR. SMILEY: I drew it out and have it for them.

"MR. COLE: Where?

"MR. MIMS: Where? Can we get it now?

"THE COURT: I am sure if you deliver it to them, they will—

"MR. MIMS: Will you give it to us now?

"MR. SMILEY: If you will agree—

"MR. MIMS: I will agree to get out if you give the money now.

"MR. COLE: I want to know where the money is. This man is taking the Fifth Amendment, and the Court has let him get by with it, I can't understand the situation.

\*　　\*　　\*　　\*　　\*　　\*

"MR. COLE: Would the court please ask him where the $20,000 is? That is all we want to know. He says he has got it. It is a very simple question. I ask the Court to help us at least as to that, to ask him where the money is.

\*　　\*　　\*　　\*　　\*　　\*

"THE COURT: Mr. Smiley, there is a difference in this matter here from your contention, the way you have it. The way I see it, and you owe an explanation to the beneficiary of this estate, and to the Court as to the accounting in this estate. The bank account there—now if you put it in there, and you drew it out—

"MR. SMILEY: Yes, sir. That is right.

"THE COURT: Is that what you did with the money?

"MR. SMILEY: Yes, sir.

"THE COURT: You drew it out?

"MR. SMILEY: Yes.

"MR. COLE: Where is it?

"THE COURT: Has the money been deposited some place for safekeeping, or has it been used?

"MR. SMILEY: Judge, since it has been —it is in safekeeping for them, and when the proper order of the Court is filed, I will produce it.

"THE COURT: What kind of proper order?

"MR. SMILEY: From the Supreme Court.

"MR. COLE: All right, we want to knew where it is.

\*　　\*　　\*　　\*　　\*　　\*

"MR. MIMS: May it please the Court. I have a motion to put before the Court that Mr. Smiley has admitted that he contends that it belongs to the Alta B. Smith estate. He has admitted he has withdrawn it, and he has secreted it somewhere. I move this Court to order him to bring that money in and put it in this Court so that this Court can hold it as escrow until it is determined by the Supreme Court whose estate it belongs to, and I call on this Court here and now to act on my motion, please.

\*　　\*　　\*　　\*　　\*　　\*

"MR. MIMS: I point out the falsity of his last partial accounting. He now says he contends that this $20,000 is an asset of this estate, and yet he files in this Court a partial accounting which he says every dime, and it is not shown in there. Where are you going to believe this man; how?

\*　　\*　　\*　　\*　　\*　　\*

"MR. MIMS: Mr. Smiley has admitted to possession of $20,000 which he also admits he has no right to in any capacity whatsoever. Your Honor remembers that statement.

"THE COURT: That is right.

"MR. MIMS: Then so help me, this Court sits there and says, Mr. Smiley do you want to. I ask this Court to make an order.

"THE COURT: [Addressing Mr. Smiley] Are you taking the attitude that you don't want to pay over the $20,000 that you admit that you have taken that doesn't belong to someone else, and doesn't belong to you?

"MR. SMILEY: When I found out it—

"THE COURT: You know good and well that there is no big question about that, because Mrs. Massey is entitled to it one way or the other. There is no question for the Supreme Court to rule on on that question that would involve any rights or liability on your part."

No purpose would be served by reciting any further evidence adduced at these hearings. The foregoing is typical of the questions put to Mr. Smiley and his responses thereto.

A petition for writ of mandamus was filed in the Supreme Court of Alabama and after hearings were conducted thereon the Supreme Court issued an order dated April 22, 1964, reciting that a rule nisi would issue to the Judge of Probate to vacate his order of April 9, 1964, provided Smiley either paid the $20,000 to the Judge of Probate or post a bond in the amount of $25,000. Pursuant to that order, Smiley paid $20,000 to the Judge of Probate on April 30, 1964. His appeal from the order entered on January 16, 1964, was dismissed for lack of prosecution, by the Supreme Court. His subsequent petition to have the appeal reinstated was denied.

The matter of the $20,000 was finally concluded by a consent settlement entered into on December 16, 1964.

Thereafter, the Grievance Committee of the Birmingham Bar Association received a complaint concerning Mr. Smiley in the form of a letter written by Walter L. Mims. The Chairman of the Grievance Committee testified that he investigated this complaint. He obtained transcripts of the testimony of Mr. Smiley of the proceedings had in the Probate Court. He also examined an affidavit furnished to the Committee executed by Mrs. Massey. The pending complaint against Mr. Smiley was considered at a meeting of the Grievance Committee which culminated in a decision by the Committee that the matter should be reported to the Executive Committee with the recommendation that disciplinary action be taken. The Grievance Committee voted to recommend to the Executive Committee that charges be filed against Mr. Smiley.

The charges so filed by the Executive Committee have heretofore been enumerated.

The only explanation which appears in more than 1,200 pages of testimony as to why the $20,000 involved in this case had been taken out of the fiduciary account and converted to cash and secreted by Mr. Smiley was to the effect that his personal income tax return was being audited by the Internal Revenue Service. He offered no explanation as to why this required secreting this cash money belonging to an estate in which he was acting as executor and attorney.

The petitioner contends in brief, and contended before the Commissioner, in the disciplinary proceeding that the matters occurring in the Probate Court and all of the motions filed on behalf of Mrs. Massey by Mr. William Cole and the participation in the case by Mr. Walter Mims was prompted by the fact that the petitioner was at that time running for Circuit Judge in the 10th Judicial Circuit. Then he takes the position that the disciplinary proceedings were instituted because he won the case in the Probate Court.

It is always with a sense of dread and with an acute awareness of our responsibility that we look to these cases where we must sit in judgment upon our brothers at the bar. In most of the cases of this kind which come to us there is conflicting testimony. This case differs in that there is essentially no conflict at all. There is certainly no conflict in the evidence to the effect that the petitioner had for a long period of time in his possession some $20,000 which he had acquired in his capacity as executor of the estate of Mrs. Alta B. Smith. There is no conflict whatsoever to the effect that Mrs. Massey was entitled to possession of these funds either in her capacity as sole beneficiary in that estate or in her capacity as executrix of the estate of Judge Clare B. Smith. Before she obtained possession of those funds, however, it was necessary for her to obtain counsel pursuant to which several hearings over a long period of time were held in the Probate Court. During the course of those hearings the petitioner refused to answer

questions about the whereabouts of the money. He refused to account for it in any manner. He refused to produce records reflecting bank transactions. It was necessary for Mrs. Massey to subpoena the records of the bank, in order to determine in what manner these funds had been disbursed from the fiduciary account.

The Board of Bar Commissioners, in reviewing the record in this case as compiled by the Commissioner named to take testimony, unanimously voted guilty on six of the charges made against the petitioner. These charges have been set out above. Without a great deal of further elaboration, it is not disputed that for a long period of time the petitioner withheld monies entrusted to him in his capacity as executor and attorney for the estate of Alta B. Smith. He parted with those funds only after repeated proceedings had been had in the Probate Court. It was not disputed by the petitioner that at all times Mrs. Massey was entitled to these funds in one capacity or the other. This conduct constitutes a violation of Rule 27 and Rule 36 of the Rules of the Supreme Court of Alabama governing the conduct of attorneys in Alabama. In In re Stuart, 257 Ala. 184, 57 So.2d 874, where the attorney involved withheld monies entrusted to him for a period of time until he yielded to pressure from the Grievance Committee to pay the same over to his client, the court said:

"In considering the question, we are not dealing with legal niceties, but the measure of good faith to be accorded by an attorney to his client and whether he has properly demeaned himself toward those high standards and trusts which inhere in his calling. Decision is not to be gauged by technical accuracies. The standard of ethics required of him is of a much higher character than is required in customary business dealings, where the parties deal at arm's length. In re Gaines, 251 Ala. 329, 37 So.2d 273.

"And whether petitioner's misconduct was animo felonico with respect to the money entrusted to him or was just a natural, habitual deficiency in his requisite regard for and devotion to the interests of his clients is of no moment in considering his guilt vel non in violating our rules of conduct; the end result was the same. He acted in bad faith in the circumstances shown in failing to discharge his trust with regard to the monies entrusted to him and thereby subjected himself to disciplinary action for a violation of the rules."

■ In this case the petitioner has offered no explanation for the fact that he used the estate's money for his own purposes. No explanation whatsoever was offered for the fact that $1,000 of this money was used to pay a death benefit to a member of the Alabama Law Enforcement Association. The only explanation which the petitioner ever offered for the manner in which he handled this estate was that it was a family matter. Mrs. Massey is his cousin. Mrs. Alta B. Smith was his aunt. This relationship does not override the duty a fiduciary owes his beneficiary. The petitioner at all times knew that the money in his possession did not belong to him. Nevertheless, he treated it as if it were his own. This constitutes a violation of our rules. See Paradiso v. Board of Commissioners of Alabama State Bar, 284 Ala. 450, 225 So.2d 855.

■ Without undue elaboration, we think clearly the evidence supports the conclusion reached by the Board, that the petitioner has violated Rule 36, Section A of the Rules. We think further that the evidence clearly supports the conclusion reached that Rule 27, Section A of the Rules has been violated. In addition to that we think Rule 12 has clearly been violated.

The petitioner's propositions of law in brief raise the following:

Proposition One is to the effect that it is the duty of this court to sit in judgment on the evidence of the case since the testimony was not taken orally before the Board of Commissioners.

We agree and have done so.

Proposition Two is to the effect that there is no presumption favoring the finding of the Board of Commissioners where the testimony was taken before a Commissioner and was not ore tenus.

We agree with this proposition and have so noted.

Proposition Three is to the same effect.

Propositions Five, Six, Seven, Eight, Nine and Ten go to burden of proof. It is the petitioner's contention that what we said in Ex parte Acton, 283 Ala. 121, 214 So.2d 685, casts the burden on the Board of proving by the evidence to the reasonable satisfaction of the triers of fact that the petitioner acted in bad faith or with fraudulent purpose to show a violation of Rule 27, which recites that no attorney should misappropriate the funds of his client by failing to pay over money collected by the attorney for the client " 'provided the circumstances attending the transaction are such as to satisfy the Board that the attorney acted in bad faith or with fraudulent purpose.' "

We agree with what was said in Ex parte Acton on rehearing. In that case the question was whether or not the attorney had an agreement with his client, under which agreement he retained money collected for that client. On rehearing the court held that under the evidence the Board of Commissioners had not carried the burden of proof in connection with that agreement.

An entirely different case is presented here. The evidence establishes without a shadow of a doubt that the petitioner in this case has withheld monies belonging to Mrs. Massey. The petitioner concedes that the money was due to be paid to Mrs. Massey in one capacity or another. Unlike Acton, he has no explanation for his failure to turn it over to Mrs. Massey other than the fact that there was some question as to which estate it belonged in. That is an insufficient answer in that he also concedes that Mrs. Massey was entitled to have it regardless of what estate it belonged in. The only other explanation he offers for having secreted the funds was to the effect that his own personal income tax return was being audited. This explanation too is no answer. Under these circumstances we think that the Board has discharged its burden of proving that the petitioner acted in bad faith or with fraudulent purpose.

As we have so often said, an attorney is under an absolute duty to give his client a full, detailed, and accurate account of all money and property which has been received and handled by the attorney as such, and must justify all transactions in dealings concerning the same. General statements will not suffice. And hence it is encumbent upon the attorney to keep complete and accurate books and records. See Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671; In re Messer, 228 Ala. 16, 152 So. 244; In re Fite, 228 Ala. 4, 152 So. 246; Ex parte Lamberth, 276 Ala. 543, 165 So.2d 93. This duty is not weakened by the fact that the attorney also is acting in a fiduciary capacity, in this case executor.

We are mindful of the fact that finally Mrs. Massey concedes that she has received all of the money to which she is entitled under the will of her mother and as executrix under the will of her stepfather. However, the restitution of funds previously misappropriated does not mitigate the offense involved in the misappropriation particularly in a case where restitution has been made under pressure.

We can find nothing in the record to authorize us to alter in any way the decision of the Board. The action taken by the Board of Commissioners of the Alabama State Bar is hereby affirmed.

Affirmed.

All the Justices concur except McCALL, J., not sitting.