57 So.2d 874

**In re STUART.**

**6 Div. 243.**

Supreme Court of Alabama.

April 3, 1952.

Ernest E. Stuart, Birmingham, pro se.

Harold M. Cook, Birmingham, for Board of Commissioners.

SIMPSON, Justice.

Petition for review by Ernest E. Stuart of the action of the Board of Commissioners of the State Bar in suspending petitioner from the practice of law in this state for a period of three years. The decision was unanimous.

Eight charges of professional misconduct with respect to five different clients were filed by the Grievance Committee of the Birmingham Bar Association. The acts complained of charged violation of certain of the standards of conduct, viz.: Rule 27, failure, in bad faith, to promptly pay or account for money entrusted to him by or for a client; Rule 33, deceit or willful misconduct in his profession; and Rule 36, conduct unbecoming an attorney (which offense would embrace the violation of any of the standards of conduct set forth in the "Rules Governing Conduct of Attorneys in Alabama").

 No useful purpose would be served by a detailed recital of the evidence. Petitioner, on a proper showing at the end of the interdictory period, might be privileged to re-enter the profession, so out of deference to his status we have exercised our prerogative and refrained from setting out the evidence *in extenso*. Code 1940, Title 13, § 66. It is sufficient to say that after a careful and considerate study, we conclude there was substantial evidence introduced to sustain the charges, thereby warranting the decision of the Board.

Only adverting to the evidence generally, it appears that four different Grievance Committees, in consecutive order, had complaints lodged with their respective chairmen against petitioner. These chairmen, all eminent and respected members of the Birmingham Bar, made demand upon the petitioner that he make good or discharge his trust with respect to monies received for or from his complaining clients. These clients claimed they had exhausted their own efforts to get him to account to them before resorting to the Grievance Committees for relief. In the several instances charged, the evidence tended to show that petitioner had received the money entrusted to him but failed to pay it over in accordance with his trust. The Lloyd case exhibits a good example, where it was shown that petitioner represented to Mrs. Lloyd that he had not collected all of the money due by her mortgage he had undertaken to collect, meanwhile retaining possession of some $525 of the money, collected some time previously, and then in the face of pressure from the debtor and his attorney, he was so dilatory in concluding

the transaction and having the mortgage satisfied· that his own client had to satisfy the mortgage without obtaining the amount due her. He tendered this money to his client on the taking of the testimony before the commissioner, nearly two years after collecting it. In the other cases it was proven petitioner withheld monies entrusted to him by his clients for certain purposes until he yielded to pressure from the respective Grievance Committees to pay the same over for ·the purposes for which he had received them. The petitioner, to excuse his conduct, claims continued illness and other alleviating circumstances, but the Bar Commission was not impressed, nor are we convinced that the Board's decision was so in error as to justify a reversal.

In considering the question, we are not dealing with legal niceties, but the measure of good faith to be accorded by an attorney to his client and whether he has properly demeaned himself toward those high standards and trusts which inhere in his calling. Decision is not to be gauged by technical accuracies. The standard of ethics required of him is of a much higher character than is required in· customary business dealings, where the parties deal at arm's length. In re Gaines, 251 Ala. 329, 37 So.2d 273.

And whether petitioner's misconduct was *animo felonico* with respect to the money entrusted to him or was just a natural, habitual deficiency in his requisite regard for and devotion to the interests of his clients is of no moment in considering his guilt *vel non* in violating our rules of conduct; the end result was the same. He acted in bad faith in the circumstances shown in failing to discharge his trust with regard to the monies entrusted to him and thereby subjected himself to disciplinary action for a violation of the rules. See Cases, 69 A.L.R. 707.

Also the attorney who collects funds for his client and thereafter falsely advises his client on inquiry that the money had not been collected (indicated by the evidence in the Lloyd case) is guilty of that willful misconduct justifying suspension or disbarment. Peters v. State, 193 Ala. 598, 69 So. 576.

A fair inference is that petitioner did not fully appreciate the duty of an attorney to account to his client, but this duty is an absolute one; and to make a full, detailed and accurate account and to do it promptly. 7 C.J.S., Attorney and Client, § 133, p. 973.

The Minnesota case of In re Gennow, 206 Minn. 389, 289 N.W. 887, 889, is of· considerable factual similarity. There the attorney under investigation was charged with lack of proper diligence in filing a suit he had been employed to file, failure to remit to a client monies collected on a mortgage until after complaint had been made to the Bar Association authorities, and failure to properly and diligently handle a proceeding in the probate court. The Supreme Court, in ordering disbarment, observed:

"An attorney's oath on admission puts him under the solemn obligation to delay no cause for lucre or malice. He is put under equally binding obligation faithfully to serve his clients to the best of his ability. That implies that he shall have an equipment of learning and ability that will enable him to serve clients as they reasonably expect to be served. Here ·there is a showing that makes unavoidable the conclusion that respondent over a long period, has demonstrated an utter lack of needed capacity properly to serve clients. The deficiency may not be due to lack of learning. It is more likely attributable to a fixed and irremovable habit of dilatoriness. No other conclusion is possible, in view of respondent's repeated inattention to the fact that his misconduct had been so persistent and damaging as to be the subject of complaint to the ethics committee of the state bar association. After the matter became the subject matter of formal complaint here, he made no resort to dilatory or obstinate tactics (for contrasting conduct see In re Disbarment of McDonald, 204 Minn. 61, 282 N.W. 677, 284 N.W. 888). That is subject for deserved commendation, but not sufficient occasion for condonation." See also 69 A.L.R. 705 note.

■ This concise conclusion is somewhat pertinent to the situation here and we must hold that the evidence is persuasive that petitioner has fallen short of his duty. Indeed, this may be inferred from his own statement before the commissioner when he testified "every time the Grievance Committee got in touch with me I tried to get rid of it some way or other. The Grievance Committee never did get in touch with me that I didn't try to contact somebody." This would seem to be the wrong approach. The Grievance Committee is not a collection agency, and the attorney who withholds the funds of his clients until called to account by the police committee of the Bar Association, the duty of which is to investigate the misconduct of attorneys, does not appear to be living up to the standards required of an Alabama practitioner at the bar.

We confess that we are somewhat moved to sympathy by the age of the petitioner, as well as his apparent lack of appreciation of any wrongdoing with respect to the transactions involved. Sympathy, however, is not the pole star to guide judicial decision. We are called on to perform our duty, as did the Board of Commissioners. So considered, we can find nothing in the record which authorizes us to override its decision.

Affirmed.

All the Justices concur except GOODWYN, J., not sitting.