274 So.2d 61

**In re John D. TARVER**

**v.**

**BOARD OF COMMISSIONERS OF ALABAMA STATE BAR.**

*In the Matter of John D. Tarver.*

**SC 20.**

Supreme Court of Alabama.

Feb. 8, 1973.

Rehearing Denied March 8, 1973.

John D. Tarver, pro se.

William H. Morrow, Jr., Montgomery, for respondent.

PER CURIAM.

Petitioner, John D. Tarver, an attorney, seeks review of a resolution of the Board of Commissioners of the Alabama State Bar adjudging petitioner to be guilty of Charges TWO and THREE of a complaint heretofore brought against him by the Grievance Committee of the Huntsville-Madison County Bar Association. He was found not guilty of Charge ONE. Petitioner was given a suspension from the practice of law for three months and a public reprimand.

Following are the charges as last amended, viz:

## "CHARGE ONE

(Violation of Rule 27, Section A)

"The said attorney did heretofore represent Flora S. Hortin and Francis Hortin and filed suits on behalf of his clients in the Circuit Court of the 23rd Judicial Circuit, cases No. 19875 and No. 19876. The said attorney negotiated a settlement of the above described cases on behalf of his clients for the sum of $5000.00. The said attorney agreed with his clients to disburse the proceeds of the settlement as follows: (a) To pay an indebtedness of his clients in the amount of $1107.00 to Dr. Paul H. Gilliam, chiropractic physician, 2608 Oakwood Avenue, N. W., Huntsville, Alabama; (b) to retain one-third as his attorney's fee; and (c) to disburse the balance to his clients. The said attorney negotiated with Dr. Paul H. Gilliam and induced him to reduce his bill from $1107.00 to $907.00. On, to-wit: June 5, 1970, the said attorney caused to be delivered to Dr. Paul H. Gilliam his check in the sum of $907.00. However, in disbursing funds to his clients, the said attorney deducted from two-thirds of $5000.00 the sum of $1107.00, and on to-wit: June 5, 1970, caused to be delivered to his clients his check in the sum of $2226.34.

"The said attorney acted in bad faith or with fraudulent purpose in wilfully failing to pay over money collected by him for his client in the sum of, to-wit: $200.00.

"The Grievance Committee charge that in doing the above described acts the said attorney was guilty of violating or failing to comply with Rule 27, Section A, of the Rules Governing the Conduct of Attorneys in Alabama, said rule providing:

'No person heretofore or hereafter admitted to practice law in Alabama shall:

'27. Misappropriate the funds of his client, either by failing to pay over money collected by him for his client, or by appropriating to his own use funds entrusted to his keeping, provided the circumstances attending the transaction are such as to satisfy the Board that the attorney acted in bad faith or with fraudulent purpose.'

## "CHARGE TWO

(Violation of Rule 33, Section A)

"For Charge Two the Grievance Committee adopts all of the averments of the first paragraph of Charge One, and allege that the above described disbursements of money were made without advising his clients that the payment to Dr. Gilliam was in the amount of $907.00 rather than $1107.00.

"The Grievance Committee charge that in doing the above described acts the said attorney was guilty of violating or failing to comply with Rule 33, Section A, of the Rules Governing the Conduct of Attorneys in Alabama, said rule providing:

'No person heretofore or hereafter admitted to practice law in Alabama shall:

'33. Be guilty of deceit or wilful misconduct in his profession.'

## "CHARGE THREE

(Violation of Rule 36, Section A)

"For Charge Three the Grievance Committee adopts all of the averments of Charges One and Two, and allege that the said attorney being guilty of a violation of Rule 27, Section A, and/or Rule 33, Section A, of Rules Governing the Conduct of Attorneys in Alabama, is guilty of conduct unbecoming an attorney at law.

"The Grievance Committee charge that in doing the above described acts the said attorney was guilty of violating or failing to comply with Rule 36, Section A, of the Rules Governing the Conduct of Attorneys in Alabama, said rule providing:

'36. No person licensed to practice law in the courts of the State of Alabama shall be guilty of any conduct unbecoming an attorney at law.' "

The circumstances out of which these charges arose, as stated 'in the "STATE-MENT OF THE FACTS" in petitioner's brief, are:

"The complaint filed by the Grievance Committee of the Huntsville-Madison County Bar Association before the Board of Commissioners of the Alabama State Bar contained three charges to the effect that Petitioner was employed by a woman and her husband in two cases that he filed arising out of the wife's accident, that he received certain monies as their attorney and that he failed to pay over to the clients, a certain portion [of] monies collected by him for and on behalf of the clients. Charge One of the complaint alleged in substance that the petitioners conduct in this regard was in violation of Rule 27, Section A. of the Amended Rules Governing the conduct of Attorneys in Alabama, 239 Ala. XXIII, et seq., 272 Ala. XXI, XXII, while Charge Two alleged that the Petitioner's conduct was a violation of Rule 33, Section A of the Rules, supra and Charge Three alleged that such conduct was a violation of Rule 36, Section A. of the Rules, supra.

"At the evidentiary hearing, the Grievance Committee's first witness was Mrs. Flora Hortin who employed Petitioner to represent her and her husband to recover damages for injuries sustained by her as a result of an accident in December, 1968. She testified that she received a call from petitioner with regard to settling her case and subsequently received a $2,226.34 check accompanied by a release to be signed by her and her husband. She testified that the attorney's check was negotiated but she refused to sign the release for the petitioner. Her testimony further revealed that she had been treated by a chiropractor regarding her injuries, Dr. Paul Gilliam. Mrs. Hortin stated that she had a conversation with Petitioner regarding court costs in her case but could not remember how costs were mentioned. She testified that she had no conversation with petitioner regarding the Chiropractor's bill but that she had found out soon after getting the check that his bill was $1107.00 but that Petitioner had gotten the doctor to reduce his bill by $200.00 and the doctor was paid $907.00 by Petitioner.

"Dr. Paul Gilliam was called next by the Grievance Committee and testified that he reduced his bill by $200.00 at the request of Petitioner. The Chiropractor stated he had seen Mrs. Hortin over 100 times and had started seeing her some time before the accident when he was treating her for a degenerative disease of Osteoarthritis. He stated that he failed to send the original bill to the Petitioner and probably advised him of the amount in a telephone conversation. He Stated that he and Mrs. Hortin were good friends and he did not mind reducing his bill. He testified that a portion of the $1107.00 bill was due because of his treating Mrs. Hortin for a disease which was unrelated to the accident and that he thought Mr. Tarver told him that Mrs. Hortin was not aware of the reduction when Petitioner got him to reduce his bill.

"Petitioner offered his own testimony to the effect that he had represented the Hortins in a claim for damages, had filed suit and negotiated with an adjustor who offered $5,000 to settle which was accepted by Mrs. Hortin in a telephone conversation. Petitioner stated that he didn't tell Mrs. Hortin about the reduction because he didn't want to hurt her feelings by bluntly telling her that Tarver thought she had been taken advantage of in that the amount of the bill was so high, and he was waiting to think of a tactful way to put it. Petitioner stated he advised Mr. Hortin that she would receive about $150.00 additional after court costs were paid which was in the settlement terms. Petitioner paid the Court Costs of $56.00 and delivered a check to Hon. Bill Morrow for $200.00 plus $12.00 interest which he delivered to Mr. and Mrs. Hortin."

Petitioner's "STATEMENT OF THE FACTS" suffers from several omissions,

particularly as to the dates of various acts mentioned. To better understand the facts, the following dates are supplied, as well as certain other relevant facts.

The auto accident in which the Hortins were injured occurred December 23, 1968. In March or April, 1969, petitioner was employed as their attorney. There was no written contract of employment.

Petitioner advised the Hortins by telephone of the settlement offer of $5,000, and they accepted it. About a week before the checks were written on June 5, 1970, petitioner advised the Hortins by telephone that he had received the settlement check of $5,000. He particularly called to have them come by and sign releases.

Both petitioner and Mrs. Hortin appear to have known that the amount of Dr. Gilliam's bill was $1107 before the settlement was effected. It seems to have been understood between them that Dr. Gilliam's bill was to be paid out of the proceeds of the settlement.

The testimony of petitioner is unclear as to whether or not, at the time of the second telephone conversation, he had already negotiated the $200 reduction in Dr. Gilliam's bill. If not, it appears that he effected this reduction the same day he talked to Mrs. Hortin.

On June 5, 1970, petitioner drew checks on his trust account to Dr. Gilliam for $907, to the Hortins for $2,226.34, and the balance (including the $200 reduction in Dr. Gilliam's bill) to himself. The bank record of his trust account is shown to have been exhausted when these checks were paid, except for the small remainder of $1.02. In petitioner's testimony, he appears to maintain that the $200 never left his trust account.

After Mrs. Hortin received her check, she called petitioner and reminded him that he had told her he would send a list of disbursements with the check. Petitioner told her he could tell her over the telephone what the disbursements were. He told her:

"I took my third. I sent the doctor his bill, and you received the rest."

(Petitioner's explanation as to why he did not disclose to Mrs. Hortin the fact that he had requested and obtained a reduction of $200 in the chiropractor's bill is that he hadn't figured out how he was going to tell her that she had been charged too much. He also appears to have maintained that he was keeping the $200 out of which to pay court costs and until the Hortins signed releases for the insurance company.)

On July 14, 1970, Mrs. Hortin wrote a letter of complaint to the Huntsville-Madison County Bar Association Grievance Committee after learning of the reduction in Dr. Gilliam's bill.

The Grievance Committee met on January 15, 1971, to hear the complaint. The petitioner was given notice of the meeting and the details of the complaint.

The Grievance Committee was advised by petitioner of a conflict between the meeting date and a federal court engagement which he had, and that he would not appear. He submitted, however, a letter, dated January 15, 1971, directed to the committee chairman, Honorable M. U. Griffin, giving his version of the complaint. In the letter, he offers to pay the Hortins a balance of $144.50, which he maintains remains after payment of court costs.

It was eight months later, however, on September 2, 1971, before petitioner delivered his check for $212 ($200 plus interest of $12) to Honorable William H. Morrow, Jr., general counsel for the Bar Association, to be forwarded to the Hortins as the balance due them.

Charges were filed against petitioner by the Board of Commissioners of the Alabama State Bar on June 2, 1971. Amended charges were filed July 14, 1971. Testimony was taken before a duly appointed commissioner on September 2, 1971 and October 18, 1971. By a resolution adopted on December 3, 1971, the Board of Commissioners found petitioner not guilty of

Charge ONE and guilty of Charges TWO and THREE, suspending him from the practice of law for three months and adjudging a public reprimand.

Petitioner's principal contention for reversal is that the Board did not bear its burden of proof to show that petitioner's failure to turn over money collected for his client was in bad faith or with fraudulent purpose, and that the resulting acquittal of Charge ONE, compels a like finding with respect to Charges TWO and THREE.

Petitioner cites Ex Parte Acton, 283 Ala. 121, 214 So.2d 685 (1968); In re Carroll, 287 Ala. 29, 247 So.2d 350 (1971); and, our most recent decision, In re Sheier, 288 Ala. 551, 263 So.2d 502 (1972), as authority for his contention.

In substance, the holding of *Acton*, supra, is that for a conviction to stand, based on an alleged misappropriation of a client's funds (Rule 27, Section A), there must be proof, to the reasonable satisfaction of the trier of fact, that the failure to turn over the money to the client was in bad faith or with fraudulent purpose. *Acton* was followed in *Carroll*, supra, and *Sheier*, supra.

This court held in *Carroll*, inter alia, that where identical facts were characterized as a violation of three separate rules, a finding of not guilty of those charges laid under Rule 12, Section A (Suppressing or Stifling Evidence or Testimony) and Rule 25, Section A (Knowing False Representation), compelled a finding of not guilty of those other charges laid under Rule 36, Section A (Conduct Unbecoming an Attorney).

■ The court reasoned that it would be contradictory to say, "You have failed to prove the allegations, which you allege violate Rule 25 and Rule 12, but you have proved the same allegations where you allege them to violate Rule 36." In re Carroll, supra. Thus, an attorney cannot *be not guilty* of knowingly making a false representation, yet *be guilty* of conduct un-becoming an attorney because he knowingly made a false representation.

In *Sheier*, this court reviewed its holdings in *Acton* and *Carroll*. In *Sheier*, both *Acton* and *Carroll* were followed, the court holding that a suspension from the practice of law, predicated upon a finding of guilty under Charge TWO for conduct unbecoming an attorney at law, for a failure to pay over funds to a client (Rule 36), was unauthorized, and could not stand, when it did not appear that the failure resulted from bad faith or fraudulent purpose and there was a finding of not guilty under Count ONE for misappropriation of funds of the client (Rule 27).

In the *Sheier* case, the same facts were alleged in both Counts ONE and TWO. The Board found petitioner not guilty of Count ONE, based, as pointed out in the opinion, "in part at least, on a lack of evidence of bad faith or fraudulent purpose on the part of petitioner." Then, the court held such a finding also compelled a finding of not guilty under Charge TWO, because the failure of the proof to support the misappropriation charge (Charge ONE) was likewise a failure of proof to support the unbecoming conduct charge (Charge TWO).

In the case at bar, certain basic facts are alleged in the first paragraph of Charge ONE and adopted in Charges TWO and THREE.

Charge ONE avers that, in doing these acts, petitioner acted in bad faith or with fraudulent purpose in wilfully failing to pay over money, to-wit: $200, collected by him for his client, a misappropriation charge (violation of Rule 27, Section A).

In Charge TWO, an additional averment appears which alleges that the disbursements were made by petitioner without advising the clients that Dr. Gilliam was paid $907.00 rather than $1107.00. Charge TWO avers that, in doing these acts, the petitioner was guilty of deceit or wilful misconduct (violation of Rule 33, Section A).

Charge THREE adopts all the averments of Charges ONE and TWO and avers that, in being guilty of either of these charges, petitioner was guilty of conduct unbecoming an attorney at law (violation of Rule 36, Section A).

At the outset, the court takes this opportunity to say that it considers its decisions in *Acton, Carroll* and *Sheier* to correctly state the law under the facts of those cases and to reaffirm the holdings in those cases.

Here, however, the court is not faced with the same situation as it faced in *Carroll* and *Sheier*. In those cases, each charge was based on identical facts, the separate charges merely alleging the same facts to be violations of different rules.

In the instant case, there are three charges, and while each avers the same basic facts, Charge TWO adds the additional averment constituting the alleged deceit.

The gravamen of Charge ONE is wilfully failing to pay over money, to-wit: $200.00 collected by him for his client. The gravamen of Charge TWO is deceit or wilful misconduct in making the disbursements of money, without advising his clients that the payment to Dr. Gilliam was $907.00 rather than $1,107.00. The gravamen of Charge THREE is conduct unbecoming an attorney at law in being guilty of either Charge ONE or Charge TWO.

We pretermit, for the moment, any consideration as to Charge THREE, first addressing ourselves to a discussion of Charges ONE and TWO.

█ It is our view that there is no incompatibility (such as found in *Carroll*) between the not guilty finding under Charge ONE (misappropriation) and the guilty finding under Charge TWO (deceit or wilful misconduct).

█ Is not an attorney, who makes a false suggestion to his clients concerning the facts or who conceals from his client the facts as to his disposition of the client's funds, guilty of deceit?

This court had such a question presented to it in a disbarment case. The charge was "deceit and willful misconduct" against the attorney, who undertook to collect, and did collect, certain promissory notes for a client and then proceeded to mark them paid; but who, in response to inquiries from the client, represented that they had not been collected. The attorney was held to be guilty of deceit and wilful misconduct. Peters v. State, 193 Ala. 598, 69 So. 576 (1915).

In *Peters*, this court, speaking through Mr. Justice Thomas C. McClellan, defined "deceit," viz:

"Deceit, as employed in that section [§ 2992, Code 1907], implies concealment or false suggestion by an attorney to injure a person, or to mislead a court, while acting in a professional capacity, or in the course of professional employment. *In re Post*, [54 Hun 634], 7 N.Y.S. 438."

The disbarment of Peters was prosecuted under § 2991, Code of 1907, et seq., and particularly § 2992, providing, inter alia, for the removal or suspension of an attorney who is found guilty, to the satisfaction of the court, of " * * * any deceit or willful misconduct in his profession." (This code section appears to be identical with Rule 33, with an almost imperceptible difference, in that the word "willful" in the Code is spelled "wilful" in Rule 33.)

The holding of this court in *Peters* is particularly helpful in resolving the issue presented in the case at bar, viz:

"According to the averments of fact set forth in the information, the appellant purposely and falsely advised the client, even after inquiry, that the money had not been collected, when it had been received by the attorney. From this status of averred fact it necessarily resulted that the client to whom the money belonged, was injured in his rights by being deprived of the possession of his funds then already paid to the attorney, and, on the other hand, the further wrongfully wrought result of conferring on the attor-

ney the benefit, naturally to be supposed, arising from his continued retention, of the fund. 'Money collected by an attorney for his client belongs, of course, to the client—not a part of it merely, but all of it; not a balance after deducting the fee of the attorney, but the total sum collected.' MacDonald v. State, 143 Ala. [101] 109, 39 So. 257. It is the duty of the attorney who has collected funds for a client to pay the same to the client, or to the client's authorized representative, without unreasonable delay. Obviously, to purposely mislead and deceive the client, or person entitled to money, in respect of the collection already made, as this appellant is charged with having done in the information * * * was both a deceit and willful misconduct, within the meaning of the quoted statute. * * *"

While it is true that Tarver never represented to his client that he had not collected any of the clients' funds, as Peters did nevertheless, the evidence here would support the conclusion that he did falsely suggest to his clients that he had paid the chiropractor's bill in full, when in fact, he had negotiated a discount of that bill (which he personally retained) and which he concealed from his clients until charges against him were being investigated by the Grievance Committee. Thus, the evidence is sufficient to sustain the resolution of the Board of Commissioners under Charge TWO.

The further question for the court's consideration is whether the finding of guilty under Charge THREE can stand under the doctrine of *Acton, Carroll* and *Sheier,* in view of the finding of not guilty under Charge ONE. It can stand, because there was sufficient evidence before the Board to substantiate a finding that petitioner was guilty of conduct unbecoming an attorney in having been guilty of deceit or wilful misconduct under Charge TWO.

Thus, the court is not confronted with the same issue presented in *Carroll* and *Acton,* where it was held that an attorney's disbarment could not be supported under the charge of conduct unbecoming an attorney, when there had been an acquittal of the specific charge, and both charges were based on the same facts.

There is no merit in petitioner's other contention that five questions and four answers in the transcript were underlined, resulting in prejudicial error in violation of his fundamental rights. While the court does not condone the permitting of a record to be so marked, it did not result in substantial prejudice to petitioner in this court's view. To be frank, the court gave no particular notice to the underlining of these few questions and answers until called to the court's attention by petitioner's contention.

The entire record has been carefully read, and the court is convinced that petitioner has been accorded every procedural safeguard and right to which, under due process, he was entitled, and that he received a fair hearing before the Board of Bar Commissioners. See In re Sullivan, 283 Ala. 514, 219 So.2d 346 (1969).

Let the resolution of the Board of Commissioners of the Alabama State Bar be affirmed.

Affirmed.

All the Justices concur.