281 So.2d 267

**In re BOARD OF COMMISSIONERS of The ALABAMA STATE BAR**

**v.**

**R. B. JONES.**

**In the Matter of R. B. Jones.**

**SC 225.**

Supreme Court of Alabama.

Aug. 2, 1973.

Rehearing Denied Aug. 30, 1973.

Charles E. Tweedy, Jr., Jasper, S. Eason Balch, Birmingham, for appellant.

W. H. Morrow, Jr., Montgomery, for the Grievance Committee of the Birmingham Bar Assn.

PER CURIAM.

This is an appeal from a penalty of suspension from the practice of law for a period of 90 days imposed on appellant (Jones) by the Board of Commissioners of the Alabama State Bar (State Bar). The Grievance Committee of the Birmingham Bar Association filed two complaints, consisting of three charges in each complaint, charging Jones guilty of violating or failing to comply with Rule 25, Section A; Rule 35, Section A, and Rule 36, Section A, of the Rules Governing the Conduct of Attorneys in Alabama. All charges allege misconduct growing out of two "quickie" divorce cases. Complaint One involves charges in the Cheney divorce while Complaint Two involves charges in the Schaffert divorce.

Charge I of each Complaint charges that Jones "did file or prosecute, or aided in the filing or prosecution of a divorce suit before the Circuit Judge of the Circuit Court of Winston County, 25th Judicial Circuit of Alabama, namely [names of parties], wherein the complaint and testimony of complainant represented to the Court that the complainant was a bona fide resident of the State of Alabama, when, in truth and in fact, said attorney knew, or had reasonable cause to believe, that neither the complainant nor the respondent was a bona fide resident of the State of Alabama". This is an alleged violation of Rule 25, Section A, which reads as follows:

"25. No person heretofore or hereafter admitted to practice law in Alabama shall:

". . .

"(b) File or prosecute or aid in the filing or prosecution of any suit, cross bill, or proceeding seeking a divorce in a Court in Alabama as attorney or solicitor for a complainant or cross complainant therein or serve as referring or forwarding attorney for such complainant or cross complainant with knowledge or reasonable cause to believe that neither party to such suit, cross, bill, or proceeding is at the time of the filing of the bill of complaint or cross bill of complaint therein, a bona fide resident of the State of Alabama:"

Jones was found guilty of this charge.

Charge II of each Complaint alleges that Jones "was associated in the practice of law with J. Robert Huie, a disbarred and unlicensed attorney residing in Birmingham, Alabama, and in association with J. Robert Huie furnished to [name of complainant] what purported to be a certified copy of a final decree of divorce in the case of [style of case], Circuit Court of Winston County, 25th Judicial Circuit of Alabama." This is an alleged violation of Rule 35, Section A, as follows:

"No person heretofore or hereafter admitted to practice law in Alabama shall:

"35. Be associated, as a partner or otherwise, in the practice of law with another person who is not then licensed in Alabama to practice law, or who is then suspended or disbarred from the practice of law, provided that this rule shall not apply to association with an attorney of a State other than Alabama who is authorized to and is practicing in such State."

Jones was found not guilty of this charge.

Charge III of each Complaint alleges that Jones "referred a client, [name of complainant], a non-resident of the State of Alabama, to J. Robert Huie, a disbarred and unlicensed lawyer residing in Birmingham, Alabama, or to the then secretary of J. Robert Huie, for the purpose of obtaining an Alabama divorce, with knowledge or reasonable cause to believe that neither [names of parties], was a bona fide resident of the state of Alabama." This is an alleged violation of Rule 36, Section A, as follows:

"36. No person licensed to practice law in the courts of the State of Alabama shall be guilty of any conduct unbecoming an attorney at law."

Jones was found guilty of this charge.

In the Cheney divorce, competent evidence adduced on behalf of the State Bar revealed that Ronald Lawton Cheney, a graduate of Harvard Law School, and a practicing lawyer in Cambridge, Massachusetts, and his wife, Kathleen, were separated as husband and wife in March, 1966, while living in Cambridge. She stayed in the apartment until 1970. He moved out of the apartment upon their separation. She is now in a mental institution. In December, 1968, Mr. Cheney testified by deposition that he was referred to Jones by John Barta, a practicing lawyer. Cheney says that he called Jones by telephone in early January, 1969, and related to Jones that he and Kathleen were anxious to obtain a divorce and asked Jones if he could get them an Alabama divorce. Cheney says that Jones responded that he could. An agreed price was $600.00. He stated that he mailed a property settlement with a cover letter in early January, 1969, to Jones. Jones was to mail Cheney an answer and waiver which Cheney would execute and return to Jones along with a check for $600.00. Cheney testified that he received an answer and waiver but could not say from whom it came. He did not have a letter from the sender, nor did he have the envelope in which the answer and waiver was mailed.

Jones, testifying in his own behalf, stated that he had several telephone conversations with Cheney, mailed the answer and waiver, received a $600.00 check, which he cashed and paid over to Miss Cox, Mr. Huie's secretary, and introduced Mrs. Cheney to Miss Cox.

As to the telephone conversations, Jones testified that Cheney did not telephone him, represented himself to be a lawyer and stated that he and his wife were considering a divorce; that he (Cheney) had checked Mexico, Nevada and other places about a divorce which he "desperately needed"; that he told Cheney that there was a local bar rule and that it was necessary to prove twelve months' residency; that the State Bar had a rule prohibiting people from out of state coming in and getting a divorce and that he did not handle these matters.

Jones further testified in this connection that he advised Cheney against an Alabama divorce and cited Alabama cases on the subject of divorce and advised Cheney that since he (Cheney) was a lawyer, he should also satisfy himself about an Alabama divorce. Jones further testified that Cheney later called him by telephone again and said that he was satisfied that "Alabama divorces were okay" and requested on a personal basis that he relate the procedures in the Alabama courts.

Jones stated that in this second telephone conversation Cheney requested that he be sent an answer and waiver form, which Jones did. Jones also testified that Cheney called a third time and advised him that he was executing the waiver and that he was going to send it to Jones together with a check for $600.00.

Miss Cox testified that K. C. Edwards served as attorney for Kathleen Kenefick Cheney in January of 1969, when Mrs. Cheney came to the office in which Miss Cox worked. Miss Cox stated that K. C. Edwards met with Mrs. Cheney in the office in which Miss Cox was working; that Jones had no part in helping Mrs. Cheney obtain a divorce; that Jones did introduce Mrs. Cheney to her; that in this connection Jones stated in the presence of Mrs. Cheney to Miss Cox that he did not handle "that type matter" and "would not handle it" and then he left; that after K. C. Edwards arrived and talked to Mrs. Cheney, she decided to "go ahead and get the divorce"; that while Mrs. Cheney gave Mr. Edwards the information and they discussed the grounds for divorce, Miss Cox typed up Mrs. Cheney's statements which she signed; that Mr. Edwards signed the complaint; that all her activities on behalf of Mrs. Cheney took place under the responsibility of Mr. Edwards; that any divorce decree that might have come out of that transaction with Mrs. Cheney was handled directly by Miss Cox and Mr. Edwards and that "Mr. Jones had nothing to do with it".

As to the Schaffert divorce, Jones' activities were essentially the same except he never personally met Mrs. Schaffert, the complainant.

## APPELLANT'S CONTENTIONS

(1) The finding of not guilty as to Charge II requires a finding of not guilty as to Charge III as a matter of law.

(2) The pleadings (the formal charge) are defective as a matter of law for failure to include an essential element of the offense.

(3) To be violative of Rule 25(b), Jones' conduct must be proved to have been as attorney for a complainant as prescribed by the Rule.

(4) The proof does not substantiate that Jones was acting as attorney for a complainant.

(5) As to Charge III, when the specific act charged is governed by one of the rules of conduct, such rule establishes the standard by which such conduct is to be measured.

## APPELLEE'S CONTENTIONS

(1) The gravamen of Charge II and Charge III are essentially different and no legal inconsistency results from a finding of not guilty as to Charge II and a finding of guilty as to Charge III.

(2) Niceties of pleading are not required in such proceedings.

(3) The spirit, rather than the letter, of the rules will be looked to in determining a violation and thus the evidence shows that Jones aided in the procurement of a "quickie" divorce.

(4) While the spirit of the rule does not require an attorney-client relationship, nonetheless, the fact has been shown that such a relationship did exist.

(5) An attorney may be guilty of "conduct unbecoming" even though he is not

charged or proven guilty as to a specific rule of conduct.

We reject the first of appellant's contentions that the finding of guilty as to Charge III cannot stand in face of the not guilty finding as to Charge II. Only where substantially the same facts constituting a single course of conduct are alleged as violations of two separate rules, does the finding of not guilty as to one preclude a finding of guilty as to the other. In re Carroll, 287 Ala. 29, 247 So.2d 350; In re Tarver, 290 Ala. 87, 274 So.2d 61.

Charge Number II in each Complaint charges that Jones "was associated . . . with . . . a disbarred . . . attorney, and in [such] association . . . furnished . . . what purported to be a certified copy of a final decree of divorce . . ." in violation of Rule 35, which reads, "No [lawyer] shall [b]e associated in the practice of law with another . . . who is then . . . disbarred from the practice of law . . .". While Charge III in each Complaint contains the words "a disbarred . . . lawyer", these words are merely descriptive and are superfluous to the gravamen of this charge. On the other hand, it is the association with a disbarred attorney—conduct which is prohibited by Rule 35—which is made the gravamen of Charge II. Therefore, the finding of not guilty as to Charge II does not of itself dictate a not guilty finding as to Charge III.

We also reject the second of appellant's contentions that Charge I and Charge III of each Complaint are defective as a matter of pleading for the reason that one of the essential elements as prescribed by the respective rules forming the basis of each charge is omitted.

As to Charge I of each Complaint, the State Bar does not contend that Jones "did *file* or *prosecute*" the actions, but that he "*aided* in the filing or prosecution" of a quickie divorce suit. Reduced to its barest essentials, this charge reads: " . . . that Jones . . . aided . . . in the filing of [a] suit . . . seeking a divorce wherein the complaint and testimony of complainant represented to the court that the complainant was a bona fide resident of the State of Alabama, when . . . [he] knew, or had reasonable cause to believe that neither [party] was a bona fide resident of the State of Alabama."

This charge is an alleged violation of so much of Rule 25(b) as reads as follows:

"No [lawyer] shall . . . aid in the filing or prosecution of [a] suit . . . seeking a divorce in a court in Alabama as attorney . . . for a complainant . . . therein . . . with knowledge or reasonable cause to believe that neither party to such suit is at the time of the filing of such [suit] a bona fide resident of the State of Alabama."

As to Charge III of each Complaint, the essential language is that Jones "referred a client . . ., a non-resident of the State of Alabama, to J. Robert Huie . . . for the purpose of obtaining an Alabama divorce, with knowledge or reasonable cause to believe neither [party] was a bona fide resident of the State of Alabama."

Although Charge III is an alleged violation of Rule 35 (conduct unbecoming an attorney), the specific misconduct alleged (with the exception hereinafter noted) is the conduct expressly prohibited by the second alternative under Rule 25(b), as follows:

"No [lawyer] shall . . . serve as referring . . . attorney for [a] complainant . . . with knowledge or reasonable cause to believe that neither party to [a divorce] suit is . . . a bona fide resident of the State of Alabama."

Superimposition of each charge and the corresponding portion of Rule 25(b) re-

veals that the phrase "as attorney . . . for [such] complainant"—words contained in the Rule—is omitted from the charge.

■ This Court is committed to the proposition that niceties of pleading have no place in a disciplinary proceedings, and we are unwilling to hold that the stated charges are defective, as a matter of pleading, for failure to track the above referred to language of the Rule. See In re Fite, 228 Ala. 4, 152 So. 246, which holds in part:

"... 'formal and technical pleadings are not essential,' being required only to sufficiently inform the attorney proceeded against that he was charged with the specific conduct indicated as unbecoming to an attorney at law; conduct that unfits him as an officer of the court and to advise and represent clients desiring the aid of an attorney; that it is only required that the particulars of the charge be stated."

See also In re Stuart, 257 Ala. 184, 57 So. 2d 874.

■ Such holding, however, is not dispositive of appellant's next contention that the omitted language ("attorney for a complainant") constitutes an essential element of the offense charged which is necessary of proof in order to sustain the conviction. The threshold issue is whether the State Bar in the instant case must prove only that Jones aided in the filing or prosecution of a "quickie" divorce as stated in the charge, or must it prove that Jones aided in the filing or prosecution of a "quickie" divorce *as attorney for a complainant* as stated in said Rule.

We hold that the latter part of this question must be answered in the affirmative and that the State Bar must prove that Jones aided in the filing or prosecution of a "quickie" divorce *as attorney for a complainant* as stated in Rule 25(b). The history and background of the "quickie" divorce rule (Rule 25) is far too familiar to the bench and bar of this state to require recitation at this point. Suffice it here to state that its purpose was to put an end to a notorious practice of fraud upon our courts in the form of perjured testimony by non-resident complainants in divorce actions. Rule 25 says in effect that where a divorce complainant invokes the jurisdiction of the court by swearing falsely as to Alabama residency, and this fact of non-residency is known to the complainant's attorney, such attorney will be held professionally liable for such illegal act. The vicarious guilt imposed upon the attorney by this Rule must of necessity arise out of the attorney-client relationship; and, consequently, "as attorney for a complainant" are not words carelessly or inadvertently used, but rather they constitute language purposefully and judiciously employed by the Rule to meet due process requirements. We think it is clear, therefore, that both the spirit and the letter of the Rule require that we interpret the words "as attorney for a complainant" as an essential element of the offense.

Having so concluded, the issue as recast becomes: Are we convinced from the evidence that the necessary incidents of the attorney-client relationship attached so as to render Jones liable for the fraud perpetrated upon the court by the complainant? We answer this question in the negative and hold that at the time of the filing of the complaint—and the testimony of the complainant representing to the court that she was a bona fide resident of Alabama —Jones did not stand in an attorney-client relationship with the complainant and was not at that time acting "as attorney for a complainant".

■ In order to create an attorney-client relationship, we hold that there must be a contract of employment between the attorney and the client, the same as in other cases of contract. In 5 Am.Jur., § 29, page 278, it is said:

"... there must be a contract of employment, express or implied, between him and the party for whom he purports to act or some one authorized to represent such party."

Also in 7 C.J.S. Attorney and Client § 65, page 848, we find a reiteration of this same principle, namely:

"In general, the relation of attorney and client is a matter of contract, and general rules as to the making of a contract govern in determining whether or not the relation has been created."

Again, a clear statement of this rule of law is found in a Louisiana case, Delta Equipment and Construction Co. v. Royal Indemnity Co., La.App., 186 So.2d 454, page 458, viz:

"The legal relationship of attorney and client is purely contractual and results only from the mutual agreement and understanding of the parties concerned. Such relationship is based only upon the clear and express agreement of the parties as to the nature of the work to be undertaken by the attorney and the compensation which the client agrees to pay therefor. The duty of an attorney to represent a litigant does not arise from the mere mailing to the attorney of documents served upon the litigant incident to a lawsuit unless, of course, the attorney is under contract or retainer . . . . the duty to defend or represent arises . . . upon the prior express undertaking of the attorney to represent the client."

It has long been the law in Alabama (and indeed it is elementary) that the mutual assent of the parties to the same thing, and in the same sense, is an essential element to every contract. Hodges v. Sublett, 91 Ala. 588, 8 So. 800. As far back as 1888, in the case of Houston v. Faul, 86 Ala. 232, 5 So. 433, this Court held as follows:

"Parties, in attempting to make a contract, sometimes appear to have agreed, when on closer inquiry, they discover they have not. They misunderstand each other, either as to the subject-matter or as to some term of the agreement. There is, in such case, an absence of that indispensable element of all contracts, the concurring assent of two minds . . . . When this is the case, and it is sufficiently shown, any court having jurisdiction will declare there is no contract."

The defendant is presumed innocent until his guilt is established. The burden of proving his guilt is on the State Bar and the prosecution, having the affirmative of this issue, must sustain such burden by proof. In re Carroll, supra; Ex Parte Acton, 283 Ala. 121, 214 So.2d 685.

Without commenting on all the evidence except as otherwise set forth, the Court notes that both Cheney and Barta were practicing attorneys; also, Barta stated he had looked up cases and satisfied himself about Alabama divorces, and according to Mrs. Schaffert had told her they were legal. It was Jones' testimony that he told both lawyers there was a rule against such divorces and cited each of these lawyers cases to this effect. Barta did state he looked into the Alabama law. It is further noted when Mrs. Cheney came to Alabama, Jones told her he did not handle this type case. Also noted is the fact that we are convinced Jones received no part of the fee, and, in fact, the attorney for the State Bar in his oral argument before the Court substantiated this fact.

At this point we feel constrained to comment that Jones' general reputation was excellent as was his general reputation for truth and veracity, and that Jones could be believed on oath even where he was interested in the results of the matter.[1] This was substantiated by seven of the Circuit Judges of Jefferson County, the District Attorney and other public officials of Jef-

1. As to bad reputation, Justice Knight, speaking for this Court as then constituted, in Ex Parte Thompson, 228 Ala. 113, 152 So. 229 (1933), said: "When

he ceases to be a man of good repute, he forfeits his right to continue as a member of the bar."

ferson County, and some eighteen active members of the Birmingham Bar Association where Jones was in active practice. Of these eighteen, several of them had been former presidents of the Birmingham Bar Association, one State Bar president, and others very active attorneys. That such a large number of reputable members of the bench and bar should come forth and attest to the accused's good character and general reputation is worthy of note and deserving of our consideration.

We have noted also the statements of some of our other higher courts in such cases dealing with the conduct of an attorney. In the Florida case of State v. Young, 30 Fla. 85, 11 So. 514, we find this statement:

". . . 'Unless we are clearly satisfied of respondent's guilt, we ought not to remove or suspend him from the practice of his profession . . . . .'

.   .   .   .   .   .

"No court should, in the exercise of original jurisdiction, disbar an attorney upon a charge of this character, establishing, if proved, his unfitness morally to be intrusted with the responsibilities of the office, unless the testimony sustains it clearly, both as to the act and the bad motive; and, where there is conflict of testimony, there must be a clear preponderance against him . . . ."

█ Considering all the evidence, and applying the above stated legal principles thereto, we are at the conclusion that the chain of events necessary to create the legal incidents required of the attorney-client relationship was broken prior to the commission of the culpable conduct sanctioned by the Rule in question. To hold otherwise would be tantamount to the interpretation that "aid in the filing or prosecution" is used in the Rule in a different context from "file or prosecute" insofar as "attorney for a complainant" is concerned. It is obvious that while each of the alternatives ("files" or "aids in filing") has a

separate field of operation, they must both be read in the same context in that whether the accused attorney "files or prosecutes" or "aids in the filing or prosecution", such conduct in order to be culpable must in either event be "as attorney for a complainant". The Court is of the opinion, therefore, that the defendant be found not guilt of Charge I in each of the two Complaints, and it is so ordered.

█ On the other hand, the State Bar contends that Charge III in each Complaint, which is an alleged violation of Rule 36 (conduct unbecoming an attorney) and not an alleged violation of Rule 25(b), has been proved, irrespective of whether Jones "serve[d] as referring . . . attorney for such complainant." The question here is: When the State undertakes to charge a violation of Rule 36 (conduct unbecoming an attorney) by specifying the doing of an act prohibited by another rule, must each of the essential elements of the latter Rule (25(b)) be proved in order to constitute a violation of the former Rule (36)?

We answer this question in the affirmative and hold that where the charge sets forth a course of conduct which has been dealt with by a specific rule, such rule establishes the standard to be applied, and we will not rewrite or otherwise modify such standard. In other words, the conduct of Jones must not be measured by some subjective standard under Rule 36, but rather it must be judged by the ascertainable standard of guilt established by Rule 25(b) which the State Bar has promulgated, and this Court has approved, relative to the conduct of attorneys in the area of "quickie" divorces. When so judged, the evidence falls short of proving that Jones referred a client "as attorney for such complainant" for the reasons set forth under our discussion of Charge I.

Having concluded that the State Bar has failed to reasonably establish the guilt of Jones as required by law, considering all

the facts in the case, we are of the conclusion that Jones should be, and hereby is, found not guilty of all charges; and we now, therefore, discharge the appellant, R. B. Jones.

Reversed and rendered.

HEFLIN, C. J., and MADDOX, Mc-CALL, FAULKNER and JONES, JJ., concur.

MERRILL, J., dissents.

COLEMAN, HARWOOD and BLOOD-WORTH, JJ., concur in dissent.

MERRILL, Justice (dissenting):

As I understand, from the testimony and briefs, the following are some of the undisputed facts:

### CHENEY DIVORCE

1. Cheney asked appellant by telephone if appellant could obtain a divorce for Cheney's wife and appellant "responded that he could."

2. Appellant asked Cheney to send him the property agreement between him and his wife and advised Cheney that he would have to sign "a waiver of notice in appearance" and that Cheney's wife would have to come to appellant's office.

3. Appellant informed Cheney that the fee would be $600.00. This figure was furnished appellant by Annette Cox, secretary to K. C. Edwards and/or J. Robert Huie, both attorneys who have been disbarred because they were in the "quickie divorce" racket.

4. In this and subsequent telephone conversations with Cheney, appellant mentioned no other attorney than himself.

5. Cheney wrote a letter to appellant about the matter and also sent the property settlement agreement.

6. Cheney received an answer and waiver from appellant, executed it and returned it with a check for $600.00 payable to appellant, along with a letter of transmittal.

7. Cheney had a telephone conversation with appellant concerning the arrangements for Cheney's wife to come to Alabama.

8. Cheney's wife came to Birmingham and went to appellant's office. Appellant escorted her to the office of J. Robert Huie and introduced her to the secretary, Annette Cox.

9. Appellant took Mrs. Cheney to Annette Cox for the purpose of obtaining a divorce.

10. Appellant handed the check for $600.00 to Annette Cox, who requested him to take the check to the bank and bring her the cash. Appellant complied with this request.

11. Annette Cox typed the decree, it was sent to the Winston County Circuit Court, In Equity, and the signed decree was mailed to Mrs. Cheney.

### SCHAFFERT DIVORCE

1. John J. Barta, a Massachusetts attorney, asked appellant in a telephone conversation about getting a divorce for his client, Mrs. Schaffert, and appellant said he would send Barta an answer and waiver.

2. Appellant told Barta the attorney's fee would be $600.00.

3. Barta received a letter from appellant which recited as follows:

"Dear John:

I am enclosing an Answer and Waiver which should be signed by the proposed respondent. You need not have this Answer and Waiver notarized, but I would appreciate it if you would witness the waiver yourself in your office. When this is signed you may get in touch with

me and let me know when the party can appear in my office.

It was certainly a pleasure hearing from you, and if I can be of further service to you, please call me.

Yours very truly

R. B. Jones"

4. Barta returned the executed answer and waiver to the appellant with a check in the sum of $600.00 payable to the appellant accompanied by a letter of transmittal dated February 20, 1969.

5. Barta had another telephone conversation with the appellant and set up the appointment for his client.

6. In that telephone conversation, the appellant told Barta that the client would not have to remain in Alabama more than one day.

7. Mrs. Schaffert went to the office of the appellant in Birmingham and returned to her home in Massachusetts the same day.

8. Upon arrival at appellant's office, a secretary took Mrs. Schaffert to another office in the building where a discussion was had with someone else and a secretary, and Mrs. Schaffert signed some papers.

9. In neither of the above telephone conversations did the appellant mention any attorney other than himself as the attorney to handle any proposed divorce.

10. The answer and waiver and $600.00 check were received in the office of the appellant and delivered to Annette Cox.

11. Annette Cox requested appellant to cash the check and bring her the cash. The appellant complied with this request.

12. Mrs. Schaffert received in the mail a certified copy of a divorce decree.

Title 46, § 25, Code 1940, provides in part that this court may review the action of the board of commissioners, "and may, on its own motion, and without the certification of any record, inquire into the mer-

its of the case and take any action agreeable to their judgment."

In reviewing disbarment or suspension proceedings, this court possesses inherent power as well as specific statutory authority to take such action as is agreeable to our judgment; and we may adopt the findings of the commissioners or may alter or modify them. Ex parte Newton, 265 Ala. 650, 93 So.2d 164; Ex parte Cooke, 263 Ala. 481, 83 So.2d 195; Ex parte Grace, 244 Ala. 267, 13 So.2d 178; Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671; Tit. 46, § 25.

Pursuant to the above authorities, I do not care to have any judge, attorney or layman in Alabama to think that I would hold, under these facts that appellant did not "aid in the filing or prosecution of any" divorce suit in a court in Alabama with knowledge or reasonable cause to believe that neither party to such cause was a bona fide resident of the State of Alabama, especially where, as here, appellant admitted that he knew that the parties in both of these cases were not residents of Alabama.

In this day when technicalities are to be avoided, it appears that the punishment proposed by the Board of Commissioners of the Alabama State Bar is set aside on the technicality that the attorney-client relationship did not exist between appellant and Mrs. Cheney in that "quickie divorce" and appellant and Mrs. Schaffert in her "quickie divorce."

Appellant is a qualified attorney and he knew he was aiding in getting a "quickie divorce," and even permitted himself to be the conduit for the delivery of the $600.00 fee in each case so that the signature of a qualified lawyer would appear on the check as endorser rather than a disbarred attorney who had no right to practice law in the courts of this state.

I respectfully dissent.

COLEMAN, HARWOOD and BLOODWORTH, JJ., concur.