BRADLEY, Judge.
This case arose over a dispute as to whether a contract existed between Leeds Telephone Company and Harvey Gillon to publish an ad in the Leeds Telephone Yellow Pages and the failure of Leeds Telephone to publish said ad.
The facts are as follows. Harvey Gillon was engaged in the plumbing business in Leeds, Alabama and also in Moody, Alabama. Gillon had taken out an ad in the Yellow Pages of the Leeds Telephone Directory in previous years. In 1978 Gillon’s ad was left out of the Yellow Pages of the Leeds Telephone Directory although his business was listed in the white pages.
Three months after the directories were distributed, Leeds Telephone distributed a flyer which was to be inserted in all its directories. This flyer contained ads that were left out of the directory. Included in the flyer was Gillon’s ad.
In 1978 Gillon moved his business address from Moody, Alabama to his home in Leeds, Alabama. He listed his phone in his home as both a business and residential phone. He had the phone in Moody disconnected. This phone number in Moody was subsequently reassigned to a competitor of Gil-lon’s. Furthermore, the telephone service to Gillon’s home and business in Leeds was terminated for a period of two days.
Gillon filed suit in district court on March 25, 1980 alleging that Leeds Telephone breached its contract with Gillon to advertise Gillon’s business in its directory and breached its contract to not transfer a business listing to another business. Furthermore Gillon alleged Leeds Telephone negligently gave Gillon’s former phone number to a competitor, negligently printed its 1978 and 1979 directories, and intentionally interfered with Gillon’s business by disconnecting his phone service on March 12, 1980 for a two day period.
After a trial on the merits the trial court, sitting without a jury, entered judgment for Gillon in the amount of $2,000.00, which was to be reduced by a counterclaim for unpaid services during the contested period of $615.05. The judgment for Gillon was based on a finding of $1,500.00 of lost profits due to the three month period Gillon had no ad in the directory and $500.00 for termination of telephone services for a two day period.
Immediately after the judgment, Leeds Telephone filed a motion to revise judgment, motion for j. n. o. v., and in the alternative motion for a new trial. These motions were denied. Leeds Telephone then filed its notice of appeal accompanied by designation of the clerk’s record, security for costs, and certified questions to the Court of Civil Appeals of Alabama.
The dispositive issue, and the only issue argued in brief, is whether the trial court erred in finding that a contract existed between Gillon and Leeds Telephone for publishing an ad in the 1978 Yellow Pages section of the Leeds Telephone Directory. We find that no such contract existed and reverse as to the $1,500.00 damages assessed by the trial court for breach of contract.
At the outset we recognize that this case was tried by the district court sitting without a jury. Such findings of fact have the weight of a jury verdict and will not be disturbed on appeal unless plainly and palpably wrong. Gann & Lewis Roofing Co. v. Sokol, Ala.Civ.App., 359 So.2d 815 (1978). Such a clear and palpable abuse of discretion occurred here.
*555 There is no evidence in the record which supports the trial court in its conclusion that a contract existed between Gillon and Leeds Telephone. The trial court in its findings stated:
The Court does not find the Statute of Limitations one year applicable in this case. The Plaintiff called the company and said, “I want an ad.” They said, “We will send someone to you.” That is a contract. The one year Statute of Limitations does not apply on that.
The evidence showed that Gillon telephoned Leeds Telephone Company to inquire about the Yellow Pages ad. Gillon testified that he knew the relationship Leeds Telephone had with its directory publisher, the A. L. Sewell Corporation, and that the A. L. Sewell Corporation handled all advertising in the Yellow Pages. The testimony showed that Sewell listed all ads, collected all ads, and proofread all ads for the Yellow Pages. In fact Leeds Telephone had no involvement whatsoever in the compilation of the Yellow Pages. Gillon testified he knew this. Gillon stated:
Q. You are not saying that they told you that you told them the exact number you wanted included in your Yellow Pages ad and how many inches by how many inches or anything during that conversation?
A. They can’t. From what I understand, only the Yellow Pages man can take that.
Q. And the Yellow Pages man is from a company called A. L. Sewell Corporation, isn’t he?
A. Correct.

Q. He is not from the Leeds Telephone Company?
A. He is not from Leeds Telephone Company.
Knowing all this when he called Leeds Telephone, Gillon was told by the girl who answered the phone that the Sewell man would not be in town for two or three weeks but that he would see Gillon about his ad. Gillon testified:
The girl that answered the phone responded in saying that for me not to worry about it because he [A. L. Sewell man] was not due for another two or three weeks at this particular time, and that he would pick up the cards.
This is clearly no contract. It has long been the law in Alabama that the mutual assent of the parties is an essential element to the formation of a contract. Board of Commissioners of Alabama State Bar v. Jones, 291 Ala. 371, 281 So.2d 267 (1973). There being no such meeting of the minds, no contract was formed. Furthermore, Gil-lon knew at the time he called Leeds Telephone that they had no authority to discuss any Yellow Pages ad.
The trial court assessed $500.00 as damages for Leeds Telephone discontinuing service to Gillon for two days; however, this issue was never argued on appeal by Leeds Telephone and we have therefore not considered it.
We reverse that part of the judgment awarding Gillon $1,500.00 in damages for breach of contract.
REVERSED AND REMANDED.
HOLMES, J., concurs.
WRIGHT, P. J., concurs in the result.