345 So.2d 1343 (1977)
In the Matter of Kenneth R. CAIN
v.
The BOARD OF COMMISSIONERS OF the ALABAMA STATE BAR.
SC 2071.
Supreme Court of Alabama.
May 6, 1977.
Rehearing Denied June 3, 1977.
George E. Trawick, Ariton, for petitioner.
William H. Morrow, Jr., Montgomery, Gen. Counsel, for Board of Commissioners of the Alabama State Bar.
PER CURIAM.
Attorney Kenneth R. Cain petitions for review of a ruling of the Board of Commissioners of the Alabama State Bar finding him guilty of professional misconduct and suspending him from the practice of law for 18 months without automatic reinstatement. We affirm.
On December 5, 1975, the Grievance Committee of the Alabama State Bar filed 58 *1344 disciplinary charges against Cain. The Board, after studying the Grievance Committee's exhibits and the transcript of testimony taken before a specially appointed commissioner and hearing oral arguments by Cain and William H. Morrow, Jr., General Counsel for the Alabama State Bar, dismissed or found Cain not guilty of 39 of the charges and found him guilty of 19 charges.
Cain was found guilty of five violations each of Rules 27 and 33, Rules Governing the Conduct of Attorneys in Alabama,[1] for misappropriation of the funds of a client:
"No person heretofore or hereafter admitted to practice law in Alabama, shall
* * * * * *
"27. Misappropriate the funds of his client, either by failing to pay over money collected by him for his client, or by appropriating to his own use funds entrusted to his keeping, provided the circumstances attending the transaction are such as to satisfy the Board that the attorney acted in bad faith or with fraudulent purpose.
* * * * * *
"33. Be guilty of any deceit or wilful misconduct in his profession. * * *"
Cain was also found guilty of nine violations of DR 1-102(A)(4), Code of Professional Responsibility of the Alabama State Bar,[2] for false testimony before the Grievance Committee:
"(A) A lawyer shall not:
* * * * * *
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, nor be guilty of wilful misconduct. * * *"
There follows a brief account of the acts upon which the action of the Board is predicated.
Cain formed the Mighty Tidy Company, an Alabama corporation. Although Cain sold his interest in Mighty Tidy to his law clerk shortly before the events in question, he continued, at all times pertinent to this inquiry, to dominate and control the company. He admitted in his testimony that Mighty Tidy was his alter ego.
As attorney for Audrey Brenda Walding in a divorce suit, Cain prepared a trust agreement dated February 27, 1973, naming himself as trustee for the minor children of Mrs. Walding and providing that Mr. Walding would pay to him as trustee $7,500. On or about March 2, 1973, Mr. Walding's attorneys delivered to Cain a check in the sum of $7,500, payable to him as trustee for the children. The divorce court incorporated the trust agreement into the final decree of divorce on March 13, 1973.
On March 16, Cain negotiated the check at the First National Bank of Birmingham, the payee bank, and received a cashier's check for $6,500 and $1,000 in cash.
On March 19, Cain negotiated the $6,500 cashier's check at the Enterprise Banking Company, Enterprise, Alabama, and received a cashier's check for $4,500 and $1,000 in cash. He deposited $1,000 to the checking account of Mighty Tidy.
On March 23, Cain negotiated the $4,500 cashier's check at the Enterprise Banking Company, $3,500 being deposited to the checking account of Mighty Tidy and $500 to the checking account of the Walding Trust and $500 being received in cash.
In 1974, an action for an accounting was filed against Cain by Mr. Walding. Cain claimed that he had invested the trust funds in accounts receivable of Mighty Tidy. The trial court found that the purported investments were improper and permitted the beneficiaries to surcharge Cain. The trial court also disallowed some of the payments which Cain had made to Mrs. Walding as not being for the benefit of the children. The Court of Civil Appeals affirmed the trial court's judgment, holding, inter alia, that Cain had violated his fiduciary duty by self-dealing. Walding v. Walding, 56 Ala.App. 181, 320 So.2d 687 (1975).
*1345 Before the Grievance Committee, Cain testified that he had discussed with Mrs. Walding the various ways in which the trust funds might be invested and that he had recommended the purchase of accounts receivable from Mighty Tidy because he could control the actions of Mighty Tidy's president and knew that he would do what was necessary to protect her interest.
The Board of Commissioners found Cain guilty of the following acts of misappropriation:
(1) depositing $1,000 on March 19, 1973, to the account of Mighty Tidy;
(2) depositing $3,500 on March 23, 1973, to the account of Mighty Tidy;
(3) receiving $1,000 in cash on March 16, 1973;
(4) receiving $1,000 in cash on March 19, 1973; and
(5) receiving $500 in cash on March 23, 1973.
Cain was also found guilty of falsely testifying to the following before the Grievance Committee:
(1) that $7,276.98 of the trust funds were used to purchase accounts receivable of Mighty Tidy;
(2) that the entire proceeds of the cashier's check for $4,500 were used to purchase accounts receivable of Mighty Tidy for the trust;
(3) that Mighty Tidy executed a group assignment of $4,500 of accounts receivable to the trust;
(4) that the entire proceeds of a cashier's check for $2,776.98 were used to purchase accounts receivable of Mighty Tidy for the trust;
(5) that Mighty Tidy executed a group assignment of $2,776.98 of accounts receivable to the trust.
(6) that none of the proceeds of the $7,500 check were received in cash, but all were converted into cashier's checks;
(7) that the entire proceeds of a cashier's check for $2,776.98 were delivered to Mighty Tidy and that none of the proceeds went through any bank account held by Cain individually or otherwise;
(8) that when the $7,500 check was negotiated no cash was received for any portion of it, but the entire proceeds were dealt with exclusively by certified checks; and
(9) that he never personally purchased any merchandise for Mighty Tidy and paid for it by cash, check, or otherwise.
Cain does not deny that he made the alleged statements, except for the last one, or that they were false, but claims that they were honest mistakes resulting from his poor recordkeeping and the great volume of cases he had been handling.
Cain's contentions before this Court may be summarized as follows:
(1) He was deprived of property, viz., the right to continue the practice of law, without due process of law, (a) because the charges filed against him were so prolix, redundant, repetitive, and vague as to prejudice him before the Board and to make his defense unnecessarily difficult and (b) because an attorney's right to a fair trial in disbarment proceedings entitles him to have the evidence actually heard by the trier of facts and he was denied that right in spite of a timely request.
(2) While what he did is largely undisputed, there is insufficient evidence of bad faith, fraudulent purpose, or intent to deceive to overcome the presumption of his innocence.
We do not believe that Cain was denied due process for either of the reasons he has given.
First, although the charges filed against him were rather lengthy, we cannot say that they were so prolix, redundant, repetitive, or vague as to prejudice Cain. In several instances, more than one charge was based on a single alleged act of Cain, but in each of those instances, each separate charge alleged the violation of a different *1346 rule. There were also numerous different wrongful acts alleged. The lengthiness of the charges could have been avoided only by omitting some of the alleged wrongful acts or by combining some of the charges. The former alternative would have placed a premium on the proliferation of wrongful acts; the latter would have served no purpose and might even have impaired the effectiveness of the notice to Cain of the charges against him.
We agree with the General Counsel's reply to Cain's second ground for arguing that he was denied due process. Because a disciplinary proceeding against an attorney is neither civil nor criminal, but is sui generis, and is not a typical adversary proceeding between litigants, but is a judicial inquiry by this Court acting through the Board of Commissioners, an accused attorney is afforded a fair trial if the trier of facts, i. e., the Board, reads a transcript of the testimony of the attorney and other witnesses. See Mildner v. Gulotta, 405 F.Supp. 182, 195 (E.D.N.Y.1975), aff'd mem. 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976); In re Richards, 333 Mo. 907, 63 S.W.2d 672, 675-77 (1933).
To Cain's second contention, the General Counsel replies that the circumstances attending the transactions and testimony in question clearly justified the Board's finding that Cain acted in bad faith, with fraudulent purpose, or with intent to deceive.
The only factual issues presented are whether Cain acted in bad faith or with fraudulent purpose[3] and whether he testified with intent to deceive, or, as Cain has put it, whether he acted from "cupidity or stupidity."
What this Court said In re Stuart, 257 Ala. 184, 186, 57 So.2d 874, 876 (1952), is pertinent to a determination of these issues:
"In considering the question, we are not dealing with legal niceties, but the measure of good faith to be accorded by an attorney to his client and whether he has properly demeaned himself toward those high standards and trusts which inhere in his calling. Decision is not to be gauged by technical accuracies. The standard of ethics required of him is of a much higher character than is required in customary business dealings, where the parties deal at arm's length.
. . . . .
"And whether petitioner's misconduct was animo felonico with respect to the money entrusted to him or was just a natural, habitual deficiency in his requisite regard for and devotion to the interests of his clients is of no moment in considering his guilt vel non in violating our rules of conduct; the end result was the same. He acted in bad faith in the circumstances shown in failing to discharge his trust with regard to the monies entrusted to him and thereby subjected himself to disciplinary action for a violation of the rules. . . ."
In the present case, Cain's failures to live up to this high standard are manifold. If Cain did, as he claims, use the trust funds to purchase accounts receivable of Mighty Tidy, he engaged in self-dealing. This self-dealing was, as the Court of Civil Appeals held and as every attorney knows, a violation of his fiduciary duty.[4] Furthermore, he failed to fulfill his absolute duty to give his client a full, detailed, and accurate account of all money and property entrusted to him and to justify all transactions pertaining to that money or property. He failed to keep complete and accurate books and records. See Smiley v. Board of Commissioners of Alabama State Bar, 286 Ala. 216, 230, 238 So.2d 716 (1970).
Cain's own admissions are overwhelming proof that he was guilty of appropriating to his own use funds entrusted to him, under circumstances indicating, at least, bad faith.
*1347 The circumstances of this case also support the Board's finding that Cain was guilty of giving false testimony with intent to deceive the Grievance Committee. Assuming that the trust funds were used to purchase accounts receivable of Mighty Tidy, the only way that Cain could have hoped to avoid being found guilty of professional misconduct was to convince the Grievance Committee that he did not control or dominate Mighty Tidy and was not guilty of self-dealing and that he could account for the trust funds and was not guilty of failing to keep complete and accurate records.
Although he now admits that Mighty Tidy was his alter ego, he attempted, in his testimony before the Grievance Committee, to disassociate himself from Mighty Tidy and was evasive in answering questions concerning his relationship to the company. Also, he made positive statements concerning his disposition of the funds even though he could not support those statements by his records. He made the statements with certainty, hoping, no doubt, that the accounting would stand up and thus leave the false impression that he had kept proper records. We note also that Cain's testimony before the Grievance Committee was not his first attempt to give an accounting.
On the basis of the record before us and the arguments of counsel, we must conclude that the Board of Commissioners' findings that Cain was guilty of misappropriation of a client's funds and of wilfully giving false testimony before the Grievance Committee are well supported by the evidence. The action of the Board is affirmed.
We decline the invitation of the General Counsel, who contends that the misconduct of which Cain was found guilty warrants more severe discipline and who urges this Court to modify the Board's action to make the discipline commensurate with the gravity of the offenses.
AFFIRMED.
All the Justices concur, except TORBERT, C. J., not sitting, and JONES, J., concurring in the result.
JONES, Justice (concurring in the result):
I concur in the result to affirm the 18-month suspension without automatic reinstatement. I would uphold the finding of guilty for misappropriation of client's funds, but I would reverse the finding of guilty for giving false testimony. Cain's statements before the grievance committee were not altogether accurate; they were carelessly and irresponsibly made; but, in my opinion, this is insufficient to ground a finding of "false" testimony.
On the other hand, I am sorely tempted to follow the urging of the Bar's General Counsel to increase the penalty meted out by the Bar Commissioners. The misappropriation of which Cain is guilty is without mitigating or extenuating circumstances. Any attempt to justify such gross misconduct on the grounds that the client was not, in fact, injured thereby seems only to magnify the wrongdoing. I am inclined to believe that the Commission took this unwarranted defense into account in limiting the sentence to an 18-month suspension. It is hard to justify so light a sentence for so serious an act of professional misconduct.
In light of the "without automatic reinstatement", however, I reluctantly agree to affirm.
NOTES
[1] These rules were in effect prior to May 6, 1974, the date of adoption of the Code of Professional Responsibility, 293 Ala. XXIII, et seq.
[2] Adopted May 6, 1974, 293 Ala. XXIII, et seq.
[3] It should be noted that DR 9-102(B)(4), Code Of Professional Responsibility, omits the requirement of Rule 27, supra, that misappropriation be committed "in bad faith or with fraudulent purpose."
[4] Walding v. Walding, supra.