ALMON, Justice.
Ronald Edward Jackson appeals from the judgment of the Disciplinary Board of the Alabama State Bar finding him guilty of fourteen charges of disciplinary rule violations and suspending him from the practice of law for three years.
On March 30, 1983, the Grievance Committee of the Birmingham Bar Association filed two complaints with the Alabama State Bar. The first complaint recited four charges arising out of Jackson’s representation of Carl E. Smith in the matter of Smith’s allegations of employment discrimination against the Tennessee Valley Authority. The second complaint recited twenty-five charges arising out of a closing of a real estate sale conducted by Jackson. After a hearing, the Disciplinary Board found Jackson guilty of two charges in the first complaint and twelve charges in the second complaint.
Jackson argues that multifariousness and prolixity of the complaints prevented him from preparing an adequate defense; that the Grievance Committee did not carry its burden of proof; that the findings of guilty on some charges were inconsistent with findings of not guilty on other charges; that he was denied the right to present his defense to the first complaint; and that the three-year suspension was too severe a penalty.
The evidence presented on Complaint I showed that in August 1981 Smith came from Huntsville to Birmingham to retain Jackson to help him with an administrative action against TVA for employment discrimination. Smith testified that Jackson mentioned the possibility of a suit in federal court. Jackson asked Smith for a $400 retainer, of which Smith paid $50 at the time and the balance in two later payments of $150 and $200. Jackson mailed Smith a contract of employment, which Smith signed and returned without keeping a copy. Smith testified at the hearing that the first page of the contract which Jackson produced in evidence was not the same as the first page of the contract which he signed.
Smith testified that after paying the retainer, he was unable to contact Jackson, despite numerous telephone calls, appointments which Jackson did not keep, visits to Jackson’s office, and letters to which Jackson did not reply. Jackson never provided Smith with any assistance in his action before TVA, nor did he file suit in federal court. Smith wrote Jackson on August 11, 1982, asking him to refund the retainer and provide a list of services rendered. When he received no response to this request, Smith went to the Grievance Committee of the Birmingham Bar Association and filed a complaint.
The evidence presented on Complaint II showed that Jackson represented both the seller, Arthur Shedrick, and the purchasers, Mr. and Mrs. Charlie Williams, Sr., at the closing of the sale of Shedrick’s home on November 23, 1979. Jackson prepared the instruments executed at the closing: the closing statement, the deed, the mortgage, and mortgage note. These documents contained several errors: for example, the mortgage reverses the parties, listing Shedrick as the mortgagor and the Williamses as the mortgagees; and the mortgage note calls for payments which would require five years to pay off the principal, although the terms of the note specify that it is to be paid within three *367 years. Jackson did not fill in the acknowledgment form which he signed as a notary public in witnessing Shedrick’s signature to the deed.
Jackson did not have the deed recorded until two weeks later, and he never had the mortgage recorded. He collected the following sums listed in the closing statement: $255.00 to obtain title insurance, $418.19 to pay a judgment against Shedrick in favor of Pizitz, Inc., and $209.02 to pay property taxes. Jackson did not make any of these payments. When Shedrick later asked him if he had paid the taxes, he at first said that he had, but later gave Shedrick a check to refund the money. He apparently told Shedrick that he would deposit money in his account the next day to cover the check, but when Shedrick presented the check at the bank three days later, it was refused for insufficient funds. The following week Shedrick negotiated the check to a third party, who later informed him that the check had been returned because of insufficient funds.
Shedrick tried unsuccessfully to reach Jackson to have him make the check good. In October 1982 he reported the bad check to the Grievance Committee. In January 1983 he sent Jackson a registered letter threatening to swear out a warrant for his arrest. Jackson promptly left on She-drick’s door a note stating that he had been “trying to contact you to make good the check that I issued.” Shedrick then went' to Jackson’s office, and Jackson paid him cash.
Jackson testified at the hearing that he had deposited the purchase money paid by the Williamses into his trust account and paid the realtors’ commissions and the balance due after closing costs to Shedrick. He reconstructed this from his bank account statement. He was not able to verify whether he had paid the sums he collected at the closing to the respective parties to whom they were due, nor to account for those monies: “I did not have available to me, records, and I could not ascertain or tell anything about what had happened in 1979 in terms of financial transactions on this account as relates to this particular matter.” Jackson stated that his office had been burglarized and some records lost, but he did have his file for this transaction.
Complaint I recited facts regarding the Smith case and alleged that Jackson “knowingly failed to pursue the matter on behalf of Mr. Smith, and knowingly failed to apprise Mr. Smith of the status of the matter.” The four charges, based on the single set of factual allegations, charged Jackson with violations of four different Disciplinary Rules of the Code of Professional Responsibility of the Alabama State Bar, 293 Ala. XXIII. The Disciplinary Board found Jackson guilty of violating DR 6-101(A), “A lawyer shall not willfully neglect a legal matter entrusted to him,” and DR 7-101(A)(2), “A lawyer shall not intentionally ... [f]ail to carry out a contract of employment entered into with a client for professional services....” The Board found him not guilty of violating DR 7-101(A)(1), “A lawyer shall not intentionally [fjail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules ...,” and DR 7-101(A)(3), “A lawyer shall not intentionally ... [pjrejudice or damage his client during the course of the professional relationship....”
The charges in Complaint II fall into seven groups. Charges I-IV allege the errors in the closing documents, the delay in recording the deed, and the failure to record the mortgage. Each of these charges accuses Jackson of violating one of the four above-quoted rules on the basis of these allegations. The Board found him guilty on all four charges.
The second, third and fourth groups of charges follow a pattern. Charges V-VIII are based on Jackson’s failure to secure the title insurance, and charge him with violation of the following rules, respectively: DR 1-102(A)(4), “A lawyer shall not ... [ejngage in conduct involving dishonesty, fraud; deceit, or misrepresentation, nor be guilty of wilful misconduct”; DR 1-102(A)(6), “A lawyer shall not ... [ejngage *368 in any other conduct that adversely reflects on his fitness to practice law”; DR 6-101(A), quoted above; and DR 7-101(A)(l) through (3), the three rules quoted above, included as a single charge. The Board found him guilty of violating DR 1-102(A)(4) but not (A)(6), and guilty of violating DR 6-101(A) (willful neglect) but not 7-101(A)(l) through (3) (intentionally failing to act or damaging a client).
Charges IX-XII make the same charges based on the failure to pay the Pizitz judgment, and charges XIII-XVI make the same charges based on the failure to pay the taxes. The Board made parallel findings of guilty and not guilty.
Charges XVII-XIX recite the delivery of the funds to Jackson at the closing. Charge XVII alleges that Jackson violated DR 9-102(A): "All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts .... ” Charge XVIII charges him with violation of DR 9 — 102(B)(3): “A lawyer shall ... [mjaintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.” Charge XIX accuses him of violating DR 9-102(B)(4): “A lawyer shall ... [n]ot misappropriate the funds of his client, either by failing promptly to pay over money collected by him for his client or by appropriating to his own use funds entrusted to his keeping.” The Board found him not guilty on charge XVII, and guilty on charges XVIII and XIX.
Charges XX and XXI raise Jackson’s failure to deliver the deed to the Williamses as violations of DR 1-102(A)(6) and DR 6-101(A). The final group of charges concerns Jackson’s dealings with Shedrick regarding the refund of the money for the property tax, and alleges violations of DR 1-102(A)(3) (conduct involving moral turpitude), DR 1-102(A)(4), DR 1-102(A)(6), and DR 7-102(A)(5) (knowingly making a' false statement). The Board found him not guilty on all of these charges.
An allegation of prolixity similar to Jackson’s has been answered in a controlling decision of this Court. In Cain v. Board of Comm’rs of Alabama State Bar, 345 So.2d 1343 (Ala.1977), Cain raised a due process argument based on the difficulty of defending the numerous charges (he had been found not guilty of 39 and guilty of 19). This Court found no due process violation:
“[Ajlthough the charges filed against him were rather lengthy, we cannot say that they were so prolix, redundant, repetitive, or vague as to prejudice Cain. In several instances, more than one charge was based on a single alleged act of Cain, but in each of those instances, each separate charge alleged the violation of a different rule. There were also numerous different wrongful acts alleged. The lengthiness of the charges could have been avoided only by omitting some of the alleged wrongful acts or by combining some of the charges. The former alternative would have placed a premium on the proliferation of wrongful acts; the latter would have served no purpose and might even have impaired the effectiveness of the notice to Cain of the charges against him.”
Id., at 1345-46.
The complaints in this case are carefully drafted to allege the various acts related to the Grievance Committee by Jackson’s clients and apparent from the documents he prepared. The division of the complaints into separate charges, each alleging a violation of a single disciplinary rule, does not render the complaints redundant, multifarious, prolix, or in any way so complicated and overwhelming as to prejudice Jackson’s right to defend himself. Rather, this careful drafting protects Jackson’s right to notice of the charges against him.
We have set out the charges at some length to answer both Jackson’s charge of prolixity and his charge of inconsistency. We find, just as in Cain and Dodd v. Board of Comm’rs of the Alabama State Bar, 350 So.2d 700 (Ala.1977), that there is no inconsistency between the findings of *369 guilty and the findings of not guilty. The Board has accepted as true the facts alleged, and we find support in the record for the Board’s findings. Indeed, Jackson’s testimony contradicted very little of the evidence that he had done the acts alleged—he mainly tried to justify or extenuate his actions. See the discussion below for Jackson’s allegation that the Board gave him no opportunity to present his defense to the Smith case.
The Board’s failure to find that these-actions supported all of the violations predicated upon them by the Grievance Committee imparts no impermissible inconsistency to the Board’s findings. Granted, the rules which the Board found Jackson to have violated are similar in some instances to the rules which it found him not to have violated, but there are shades of difference —otherwise, why have separate rules?
For example, the finding in the Smith case that Jackson violated DR 6-101(A), willfully neglecting a legal matter, is distinguishable from the finding that he did not violate DR 7-101(A)(l), intentional failure to seek the lawful objectives of his client. Jackson’s knowledge that Smith was pursuing his administrative action on his own would support a finding that he did not intentionally fail to seek Smith’s objectives, but would not preclude a finding that he willfully neglected to assist him, as he had been hired to do.
Jackson asserts that the Grievance Committee did not sustain its burden of proof. The charges must be proved by clear and convincing evidence. Worley v. Disciplinary Board of the Alabama State Bar, 407 So.2d 822 (Ala.1981); Hunt v. Disciplinary Board of the Alabama State Bar, 381 So.2d 52 (Ala.1980). We have reviewed the record and find that the evidence supports the Board’s findings.
Jackson also argues that the Board violated his rights to due process of law, guaranteed by the Fourteenth Amendment to the United States Constitution, when it did not allow him to present his defense in the Smith case. Counsel for the Bar proceeded directly from the Smith case to the Shedrick case. The Bar responds to Jackson’s argument by saying that this followed the usual manner of conducting disciplinary hearings involving more than one complaint: “Unless there is a prior stipulation between the State Bar and respondent’s counsel to proceed in a different fashion, the State Bar always presents its evidence as to all of the complaints before the respondent attorney presents his evidence in defense.” (Emphasis by the Bar.)
Whether or not this is indeed the Bar’s normal practice makes no difference. Jackson made no objection when the Board instructed counsel for the Bar to proceed with Complaint II. At the close of the proceedings, the Board noted that no questions had been asked about the Smith case. Jackson’s attorney responded,
“We were not given an opportunity to put Mr. Jackson on the stand at the end of Mr. Yung’s case. He went directly into the other case.
“If the Panel would like to give to Mr. Jackson the reputation [sic—refutation?] of the allegations made by Mr. Smith, we’d be glad to do that. But, I would certainly like to argue testimony given by Mr. Smith, and the evidence that has been placed, written evidence that has been placed into evidence, here.”
Counsel then proceeded directly into his argument. This exchange clearly shows that he was aware of the opportunity to place Jackson on the stand to respond to Smith’s allegations, but chose not to do so. The Board not only gave Jackson the opportunity to present his case, but also pointed out that he had neglected to do so with regard to Complaint I. There was no due process violation here.
Finally, Jackson argues that the three-year suspension was too severe a penalty. We disagree. The essentially uncontested facts showed Jackson’s continuing disregard for his clients’ affairs and appropriation of their money without providing the services for which he was retained. The Board’s punishment for this conduct was not too severe.
*370 For the reasons stated, the judgment is affirmed.
AFFIRMED.
All the Justices concur except ADAMS, J., who recuses.